Argued October 6, affirmed October 26, petition for rehearing
denied November 22, 1960

## SMITH *v.* JACOBSEN
356 P. 2d 421

*James B. O'Hanlon,* Portland, argued the cause for appellant. With him on the briefs were Mautz, Souther, Spaulding, Kinsey & Williamson and James H. Bruce, Portland.

*Philip A. Levin,* Portland, argued the cause for respondent. On the brief were Leo Levenson, Samuel Jacobson and Pozzi & Wilson, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and King, Justices.

KING, J. (Pro Tempore)

This is an action for damages for personal injuries suffered by the plaintiff when struck by defendant's automobile in a marked crosswalk in Portland, Oregon.

The case was tried by a jury and verdict was rendered in favor of the plaintiff. Defendant appealed after his motion for a new trial was denied.

On the evening of December 20, 1957, at approximately 6 p.m., the plaintiff was walking north on Third avenue, south of the intersection with Pine street. That intersection of Third and Pine streets was controlled by red and green traffic lights and "Wait" and "Walk" pedestrian signals. Third avenue was a one-way street, all traffic moving south. Pine was a one-way street, all traffic moving east.

When plaintiff arrived at the south curb of Pine street, the pedestrian signal showed "Wait." After the signal changed to "Walk," he looked to his left, saw the traffic stopped and proceeded to cross Pine street. After he had crossed the center of the street, he was struck by defendant's car.

Defendant was driving south on Third avenue. He was driving in the left lane of traffic. He stopped for the red light at the intersection of Third and Pine and proceeded to make a left turn onto Pine street after the traffic light turned green. It was while defendant was making this left turn that plaintiff was struck.

The plaintiff was taken to St. Vincent's hospital, suffering primarily from an injury to his left knee, his left elbow and from concussion, nervousness and shock.

He was seen the next morning by Dr. Howard L. Cherry, an orthopedic specialist, and thereafter was treated by him. He remained in the hospital until January 1, 1958. He was given sedatives, was X-rayed, and a cast was put on his left leg before he left the hospital.

The jury, by their verdict, found the defendant

guilty of negligence and the plaintiff free from contributory negligence. This was apparently a proper determination of those issues, as the defendant does not raise those questions on this appeal. In fact, in his closing argument defendant says: "If you find he was not contributorily negligent and I have to admit that Mr. Jacobsen was negligent, then the plaintiff is entitled to damages. It is just that simple." So we need concern ourselves no further with the question of liability.

The defendant bases his appeal upon five assignments of error which we will consider without quoting them verbatim, but giving their substance only.

The complaint in this case did not allege a fracture of the left knee in exact words. It did not use the word "fracture." The complaint did allege "a torn cartilage and ligaments in the left knee," and it did allege, among other things: "bruises and contusions to his head, body and limbs, a tearing, twisting and wrenching of the muscles, tendons, ligaments, bones, nerves and soft tissues of his body and limbs  *  *  * and has sustained permanent injuries  *  *  *."

X-rays were taken of the left knee the evening of the accident, December 20, 1957, and the next day, December 21, 1957, and again on September 29, 1958, by plaintiff's doctors, and on May 28, 1958, by defendant's doctors. They all read these X-rays to show no fracture of the knee, except that Dr. Cherry thought the September 29 X-rays showed a depression which indicated a fracture, and the morning of the trial, when re-examining the various X-rays taken under his supervision, Dr. Cherry discovered what he claimed to be a fracture of the tibia of the left knee in the earlier X-rays, that had previously been overlooked.

It was to Dr. Cherry's testimony regarding this fracture that assignment of error No. 1 was directed.

Assignment of error No. 2 was directed at the trial court's failure to grant a mistrial because the fracture evidence was allowed.

Assignment of error No. 3 was that the court erred in permitting plaintiff to amend his complaint by interlineation to allege the fracture. These first three assignments of error will be considered together.

The Oregon statute regarding amendment of pleadings is set forth in ORS 16.390:

> "The court may, at any time before trial, in furtherance of justice, and upon such terms as may be proper, allow any pleading or proceeding to be amended by adding the name of a party, or other allegation material to the cause; and in like manner and for like reasons may, at any time before the cause is submitted, allow such pleading or proceeding to be amended, by striking out the name of any party, or by correcting a mistake in any other respect, *or when amendment does not substantially change the cause of action or defense,* by conforming the pleading to or proceeding to the facts proved." (Emphasis supplied.)

Under this section considerable latitude has been allowed in making the various types of amendments. It has been left largely to the discretion of the trial court in determining whether the amendments were in the furtherance of justice and whether they took the adversary by surprise. *Bramwell v. Rowland,* 123 Or 33, 42, 261 P 57; *Davis v. Springer,* 128 Or 582, 275 P 600; *Lancaster v. May, Adm.,* 194 Or 647, 243 P2d 268.

Another rule of law has been set forth in a number of Oregon cases, referring to the discretion of the court to allow a complaint to be amended to con-

form to the facts proved, provided the amendment does not substantially change the cause of action, and that rule is set forth by Mr. Justice MILLARD in the recent case of *Wood v. Southern Pacific Co.*, 216 Or 61, 72, 337 P2d 779, as follows:

> "Before such amendment is permitted, evidence upon which to base it must be received without objection."

*Mendenhall v. Harrisburg Water Co.*, 27 Or 38, 42, 39 P 399; *Bishop v. Baisley*, 28 Or 119, 127, 41 P 937; *Tracy and Baker v. City of Astoria*, 193 Or 118, 129, 237 P2d 954; 71 CJS 619, Pleading § 285f.

In the case of *Wood v. Southern Pacific Co.*, supra, the plaintiff attempted to prove damage to his arm, when no such damage or injury to his arm was alleged or mentioned in any form in the complaint. The testimony would indicate that the plaintiff knew of the claimed condition of his arm when the complaint was filed, and the defendant had absolutely no notice of any claim for arm injuries or damage to the arm. Objections were timely made. There is no claim of any other evidence in the record in that case of arm injuries.

In the case at bar the plaintiff's complaints from the time of the accident were principally, in fact, almost exclusively, complaints of pain, soreness and injury to the knee of his left leg. Injury to the knee of the left leg was alleged, and defendant's doctor examined him for that same injury. The plaintiff in this case had no knowledge of the fracture, and there is no evidence that his attorneys or his doctor discovered the fracture until the morning of the trial. It differs materially in that respect from *Wood v. Southern Pacific Co.*, supra.

In the present case there were various pieces of evidence regarding fracture of the knee received in evidence without objection. In the hospital record received in evidence without objection, injury to the left knee was shown, but the statement of Dr. Rees, radiologist, indicates no bone injury. Also in Dr. Cherry's file of the case, which the defendant himself introduced in evidence, is the statement of the intern who examined the plaintiff immediately after the accident: "Fracture to tibial head." All the X-rays, including the ones taken immediately after the accident, showing the fracture were received in evidence without objection.

Dr. Cherry on direct examination, speaking of later examination of plaintiff, testified as follows:

"Q Did you make a further diagnosis at that time based on the additional information?

"A I did. I took X-rays of both his elbow and his knee. The elbow appeared to be completely normal as it has previously. The knee showed an area on what we call the lateral plateau that was depressed. This had not been noted before and the only cause of a depression of this portion of the bone would be a fracture. Following this observation I got out the old films and went over them with two radiologists. Incidentally I did not ask them and they did not know they had read them before. We all agreed there was a fracture on the previous film that had been overlooked by us."

There was no objection whatever made to the above question and answer. The next question asked was:

"Q When was that? When was that determined there [sic] there was a fracture on the left knee?

"A The depression I noted was ———

"MR. O'HANLON: I move that reference to the fracture be stricken for the reason that it was lead-

ing. They come up here in court and said there was a torn ligament. There is no evidence of any fracture and I move that it be eliminated from the case. It is outside the plea.

"MR. WILSON: We have a tearing, twisting and wrenching of the muscles, tendons, ligaments, bones, nerves and soft tissue. A fracture is qualified under those terms.

"MR. O'HANLON: I will object to him asking the doctor that question.

"THE COURT: Motion denied, exception allowed.

"MR WILSON: Doctor, when was the determination made by the radiologists that a depression was there and that a fracture existed?

"THE WITNESS: The depression and fracture was noted by me on September 29th. This comparison with the film with the radiologists was made this morning."

After the above questions, answers, objections and rulings, five different questions were asked the doctor and quite lengthy answers given regarding the X-rays and the fracture shown and explained in the view box, without further objection until the following:

"MR. O'HANLON: May I have a continuing exception to all this?

"THE COURT: You may."

There were no other objections made during Dr. Cherry's direct examination, and he was examined at length by the defendant on cross-examination regarding the injuries, treatment, X-rays and their interpretation.

■ We hold that the objections were not promptly made, were not specific enough and were properly

ruled on by the court. *State v. Mizis,* 48 Or 165, 85 P 611, 86 P 361; *Perry v. Hunt,* 62 Or 256, 125 P 295; *Derrick v. Portland Eye Etc. Hosp.,* 105 Or 90, 209 P 344; *Daniels v. Riverview Dairy,* 132 Or 549, 287 P 77.

There was sufficient evidence received without objection to take this case out of the rule applied in *Wood v. Southern Pacific Co.,* supra, and the trial court did not abuse his discretion in allowing the plaintiff to amend his complaint to allege a fracture of the knee of the left leg.

The defendant moved for a mistrial, claiming surprise. His motion should have been for a continuance if he desired time for additional preparation. A mistrial would have meant starting the trial over again; the continuance, if granted, would have given reasonable time to combat the claimed surprise. It might and probably would have meant only a delay in the present trial.

The only reason for a mistrial claimed by the defendant was surprise in the claim of a fracture. A delay would have availed him nothing, as his own medical expert, Dr. Harder, who had examined the plaintiff before trial and saw the X-rays showing the fracture at the trial, testified on redirect examination as follows:

"Q At the time you examined the man after you took the history and the examination and all you found no permanent injury to the knee, is that true?

"A Yes.

"MR. O'HANLON: I think that is all.
"RECROSS EXAMINATION

"Q Now, doctor, isn't it a fact that the man's

tibia shows a depression and permanent injury—I mean a permanent injury?

"A There is a permanent change there but when you state permanent injury—

"Q There is a permanent injury to the bone, isn't there, doctor?

"A As far as the functional capacity or disability is concerned that is another thing. Fractures can heal and give no permanent disability.

"Q Isn't it true, doctor, after discovering the fracture of the tibia you would want to conduct further examination to determine the disability and not depend on the fracture in the X-rays, tell me that, doctor?

"A No, sir."

From the foregoing testimony of defendant's expert it is clear that a continuance would have availed them nothing so far as disproving the claim of permanent injury is concerned. The continuance could not have helped them so far as pain, suffering, confinement and special damages were concerned. If anything, it might have hurt them.

No error was committed in denying the motion for mistrial. It was not error for the court to make the actual amendment at the end of the trial, after he had granted it verbally before.

Assignment of error No. 4 is that the court erred in permitting Dr. Cherry to testify to the opinion of consulting radiologists.

■ This testimony was properly objected to by the defendant. It was hearsay and normally should have been rejected. However, in this case the question objected to was on redirect examination of Dr. Cherry and after the defendant himself on cross-examination had already put in evidence the written statements

of Dr. Rees and Dr. Haslinger regarding the X-rays and had questioned Dr. Cherry about those statements.

The error was invited and was not reversible error, especially in view of defendant's own doctor's later testimony that the X-ray showed evidence of a fracture.

Assignment of error No. 5 alleges the trial court erred in denying defendant's motion for a new trial on the grounds of newly discovered evidence.

In substance the defendant claims to have discovered evidence since the trial that the plaintiff was previously injured in 1952 and was awarded 15% loss of function of an arm for back injuries.

■ We find nothing in the transcript of testimony to show that the plaintiff was ever questioned regarding a previous injury. The affidavits attached to the motion for new trial mention that such a question was asked in a pretrial deposition and an unsatisfactory answer given. The plaintiff was not questioned before the trial court on that alleged part of his deposition, and the deposition is not in evidence and cannot be considered by this court. There is no competent evidence that plaintiff said he had no previous injuries to his back. Furthermore, the question of back injuries was not before the jury, having been removed by order of the trial court.

In any event, the alleged newly discovered evidence could avail the defendant nothing on the question of impairment of earning capacity. Impaired earning power or capacity is nothing more than a way of expressing a part of general damages resulting from the injury. *Brown v. O.-W.R. & N. Co.,* 63 Or 396, 128 P 38; *Davis v. Springer,* supra; *Adskim v. O.-W.R. & N. Co.,* 134 Or 574, 294 P 605; *Shaw v. Pacific Supply Coop.,* 166 Or 508, 113 P2d 627.

In *Fields v. Fields,* 213 Or 522, 537, 307 P2d 528, 326 P2d 451, after referring to *Shaw v. Pacific Supply Coop.,* supra, Mr. Justice McAllister said:

"* * * Impaired earning capacity is a direct and natural consequence of a disabling injury of a permanent or lasting nature, is an element of general damages * * *."

■ So, in this case the impairment of earning capacity of plaintiff, if any, is an element of the general damages and is a direct and natural consequence of knee injury and other injuries alleged and proved in this case. He could recover for the impairment of earning capacity as a direct result of the injuries in this case and as an element of general damages. The measurement would be what his earning capacity was immediately before the accident and what it was reduced, if any, by the accident, in determining that issue of the case.

We believe that the newly discovered evidence would have had little, if any, value and at most would have been merely cumulative of other evidence offered on general damages.

Diligent search would have made the fact of prior injuries available to defendant. The prior case was filed in Multnomah county, Oregon, and was against the State Industrial Accident Commission of Oregon. A check would have been simple to make, the defendant already having knowledge that the plaintiff was a workman and very probably at times would be under the Workmen's Compensation Law.

We have carefully examined all the claims in defendant's motion for new trial and find that the trial court properly denied them.

Affirmed.