Argued October 11, affirmed November 16, 1972

SCOTT, *Respondent, v.* MERCER STEEL CO. ET AL, *Defendants,* ALLEN C. EDWARDS REALTY CO., *Appellant.*

503 P2d 1242

*Austin W. Crowe, Jr.,* Portland, argued the cause for appellant.

*James H. Clarke,* Portland, argued the cause for respondent.

TONGUE, J.

This is an action for damages for personal injuries sustained in walking through a glass panel adjacent to a glass door in defendant's realty office. Defendant appeals from a verdict and judgment in favor of plaintiff.

Defendant's principal assignments of error arise from the denial of motions for an involuntary nonsuit and for a directed verdict. It thus becomes necessary to review the evidence, bearing in mind the rule that in such cases the evidence must be viewed in the light

most favorable to the plaintiff and that plaintiff is entitled to the benefit of every reasonable inference which may be drawn from the evidence. *Gordon Creek Tree Farms v. Layne et al*, 230 Or 204, 218, 358 P2d 1062, 368 P2d 737 (1962).

Defendant is a corporation engaged in the realty business. One of its offices is located in the garage area of one of the model homes in the Somerset West residential subdivision in Washington county in space leased by defendant from the owner of that building. The office was in a room with a desk and tripods used for the display of maps of the area. The front of the office, originally designed as the front of a double garage, had been remodeled so as to include two large glass panels in the space originally designed for one garage door and a glass door, as well as an adjoining glass panel, in the space originally designed for the other garage door. The three glass panels and the glass door were all approximately the same height, but there was a low "ledge" of two or three inches at the bottom of the glass panels.

Plaintiff had purchased a house from defendant in Somerset West two months prior to the accident and had been in the office "quite a few times." Her last previous visit, however, had been about a month and a half before the accident. According to her testimony (although not without some contradiction by prior statements on deposition), on all of her prior visits the glass door to the office had been closed and had to be opened by her, while on the day of the accident it had been "propped" open. Also, at the time of her prior visits, a desk had been located in the interior of the office in front of the glass panel adjacent to the door, and the weather had been cloudy and rainy.

In addition, at the time of her prior visits plaintiff had left the office from a position near the desk and "in front" of the door and had never been in the "back" of the room before so as to have an occasion to leave the room starting from a position "at an angle" with the door.

On July 17, 1969, the day of the accident, plaintiff went to defendant's office to report that her hot water heater was leaking. According to her testimony, it was a beautifully sunny day and the office door had been "propped" in an open position, "swinging to the outside." Upon entering the open door she found no one in the office. She waited for a time, looking at the maps exhibited of the area and diagrams of the schools which were scheduled to be built.

Plaintiff then turned to leave and saw her mother-in-law and child in her car parked in the driveway outside. According to her testimony, the glass panel was clear and was without drapes or "markings" of any kind. She could see the open door (in its "propped out" position) adjacent to the glass panel and assumed that it was the open area of the doorway.

She was then standing six or seven feet from the doorway, apparently at some "angle" from the doorway, but directly in front of the glass panel. From that position she started toward what she believed to be the open doorway, but what was actually the adjacent glass panel. That panel, made of 3/16 inch crystal glass, rather than tempered or safety glass, shattered on impact, causing severe injuries to plaintiff's leg.

Plaintiff's outlook through the clear glass panel adjacent to the "propped open" door is shown by the following photographic exhibit, except that this exhibit

does not show the narrow "ledge" at the bottom of the glass panel. Plaintiff admitted prior knowledge of the existence of that "ledge" at the bottom of the glass panel, but on the day of the accident believed the glass panel to be the open doorway.

According to the final report in June 1970 of the National Commission on Product Safety:

"Every year, about 150,000 victims of broken windows, doors, or glass walls discover that what they can't see can hurt them. About 100,000 walked through glass doors last year, probably believing the space to be open. If the doors had been safety glazed, most of the serious injuries would not have occurred. But the fragile, brittle panels of ordinary glass shatter even under a light blow from a child. The crystal knives and daggers slice through the hand or wrist, cut vital organs, and cause permanent disfigurement, paralysis, or death. * * *" S Rep No. 225, 90th Cong, 1st Sess 12 (1970).

In response to public hearings on this problem, several states, including Oregon, adopted legislation to require safety glazing in glass doors and adjacent glass panels.[1] See ORS 447.150.[2]

However, the building in which defendant's office was located and in which this accident occurred was constructed in 1964 and was occupied by defendant in 1965, prior to the effective date of that statute on July 1, 1970.[3] The accident also occurred prior to that

---

[1] Final Report, National Commission on Product Safety, S Rep No. 225, 90th Cong, 1st Sess 12, 88, 128 (1970), as also reported in 4 Frumer & Friedman, Products Liability, App-330, -410, -454, App E.

[2] ORS 447.150(1), as adopted by Oregon Laws 1969, ch 452, § 1, p 814, provides:

"The State Board of Health shall adopt rules to establish minimum safety standards for glass and plastic to be installed in any building for those openings subject to human impact such as entrance or exit doors, sliding doors, storm doors, shower doors and bathtub inclosures, including transparent panels which may be mistaken as a point of ingress or egress."

[3] Oregon Laws 1969, ch 452, § 2, p 814.

date.[④] Accordingly, plaintiff's rights and defendant's liability in this case must be considered and determined based upon Oregon law as it existed as of the date of this accident on July 17, 1969.[⑤]

Defendant has summarized its contentions on this question as follows:

"A. The presence of a glass window and doorway on premises does not, as a matter of law, constitute a dangerous condition (Restatement of Torts 2d § 343), and there is no duty to warn an invitee of their presence *where the conditions and the danger of injury are open and obvious* under circumstances where the possessor has no reason to anticipate the harm (Restatement of Torts 2d § 343A).

"B. An invitee who has previously entered premises on eight occasions through a glass doorway with glass panels on either side, who has also departed through the same doorway on eight occasions, and who has again entered the premises through the doorway shortly before the incident, has knowledge of *the conditions which are open and obvious* and of the risk of injury, and is contributorily negligent as a matter of law for failing to maintain a proper lookout and failing to exercise her senses and faculties for her own safety, *where there was no distraction or excuse for her failure to see the window.*"[⑥] (Emphasis added)

---

[④] Pursuant to ORS 447.150, the Oregon State Board of Health has since adopted regulations on this subject. Or Ad Rules ch 333, §§ 15-005, 15-010.

[⑤] We also express no opinion as to the application of ORS 447.150 to the obligations of a tenant as the possessor of a building, as distinguished from those of the builder or owner of the building.

[⑥] 2 Restatement 215-16, Torts 2d § 343, provides as follows:
"A possessor of land is subject to liability for physical

Defendant also says that:

"* * * It is common knowledge that store fronts of solid clear glass paneling are commonly accepted as sound and safe building construction, and it is not considered a type of construction that is dangerous in itself."

It is at least tacitly recognized by defendant, however, that the result may be otherwise in cases in which there is a "deceptive appearance" about the glass door or glass panel, in view of defendant's further contentions that "[t]here was no evidence that defendant knew that the glass panel and door created a deceptive appearance or a dangerous condition"; that "[t]he duty to keep premises safe for invitees applies only to conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee and would not be observed by him in the exercise of ordinary care"; that the only dangerous condition claimed by plaintiff was the deceptive appearance of the glass, and that plaintiff's contention that the glass in the window panel was deceptive and appeared to be a

harm caused to his invitees by a condition on the land if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger."

2 Restatement 218, Torts 2d § 343A(1) also provides as follows:

"(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

doorway was "no excuse," particularly in view of plaintiff's previous visits and awareness of the glass window panel.

Plaintiff contends, to the contrary, that "[t]his is not the case of an open and notorious condition on the premises, but rather of a deceptive [and therefore hidden] condition which was dangerous to any invitee such as plaintiff who might be misled by it"; that the unmarked glass panel adjacent to the open door presented a deceptive illusion of open space which deceived this plaintiff; and that in such cases the courts have held that a plaintiff who walks into or through such a glass door or panel is entitled to recover damages for his injuries against the possessor of the building.[7]

Although some of the cases cited by plaintiff may be distinguishable on their facts, they support this proposition, which is consistent with prior decisions of this court, although we have not had occasion to previously decide this particular question.[8] We have

---

[7] Citing National Bank of Alaska v. McHugh, 416 P2d 239 (Alas 1966); Jaillet v. Godfried Home Bakeries, Inc., 354 Mass 267, 236 NE2d 924 (1968); Scott v. Liebman, 404 SW2d 288 (Tex Sup Ct 1966); Kanner v. Best Markets, Inc., 188 Pa Super 366, 147 A2d 172 (1958); Grabel v. Handro Co., 161 NYS2d 998 (NY City Ct App 1955); Isenberg v. Ortona Park Recreational Center, Inc., 160 So 2d 132 (Fla Dist Ct App 1964).

[8] See Mickel v. Haines Enterprises, Inc., 240 Or 369, 400 P2d 518 (1965), and Burton v. Abbett Tinning & Roofing Co., 120 Or 536, 252 P 973 (1927). Cf. Dawson v. Payless for Drugs, 248 Or 334, 433 P2d 1019 (1967). See also Eberle v. Benedictine Sisters, 235 Or 496, 385 P2d 765 (1963), and Landolt v. The Flame, Inc., 261 Or 243, 492 P2d 785 (1972).

As also stated in 2 Harper and James, The Law of Torts 1491, n. 11, § 27.13 (1956) (although not with reference to glass windows or doors):

"* * * clearly visible conditions may often be unreason-

also examined the cases cited by defendant.⑨ Most of them may be distinguished on their facts. To the extent, however, that they are inconsistent with our decision in this case we do not find them to be persuasive.

The question remains, however, whether there was evidence in this case from which the jury could properly find that this unmarked glass panel presented a deceptive appearance of open space to persons leaving defendant's office involving an unreasonable risk of harm to invitees of which defendant was or should have been aware, so as to impose liability upon plaintiff. Similarly, the question remains whether, under such evidence, the jury could properly find that this unmarked glass panel presented such a deceptive appearance of open space to persons leaving defendant's office as to excuse plaintiff from contributory negligence, despite her knowledge of its existence based upon previous visits to defendant's office.

■ After examining the entire record, we hold that

---

ably dangerous to the customer because he is in fact not likely to observe them. * * *"

In addition see Prosser on Torts (4th ed 1971) 394, § 61 and Annot., 41 ALR3d 176, 208.

⑨ These cases include the following:

Valunas v. J. J. Newberry Co., 336 Mass 305, 145 NE2d 685 (1957); Venuto v. Lubik Oldsmobile, Inc., 70 NJ Super 221, 175 A2d 477 (1961); Snyder v. Ginn, 202 Va 8, 116 SE2d 31 (1960); Acme Laundry Company v. Ford, 284 SW2d 745 (Tex Civ App 1955); A. C. Burton Co. v. Stasny, 223 SW2d 310 (Tex Civ App 1949); Pinkey's Liquor Stores of Odessa, Inc. v. Carlee, 431 SW2d 633 (Tex Civ App 1968); Lopez v. American National Bank of Cheyenne, 389 P2d 21 (Wyo 1964); Gardino v. H. S. Barney Co., Inc., 17 AD2d 895, 233 NYS2d 686 (1962); Dukek v. Farwell Ozmun Kirk & Co., 248 Minn 374, 80 NW2d 53 (1956); Presbyterian School of Christian Education, Inc. v. Clark, 205 Va 153 (1964); and Winthrop v. 1600 Sixteenth Street Corp., 208 A2d 624 (App DC 1965).

there was sufficient evidence from which the jury could properly find that the following facts and circumstances existed in this case:

1. Defendant had been engaged in the sale of residential property for several years;

2. The desk, which had previously been placed in front of this window panel, had been moved so as to leave nothing in front of the glass panel, as in the past;

3. Any drapes for that panel were not drawn and the glass in the panel was clear and unmarked and extended for the full heighth of the adjacent door, except for a narrow ledge at the bottom;

4. The adjacent door had been "propped open" and was in such a position that a person standing in plaintiff's position as she started to leave the office could reasonably have believed that it was the door to the space occupied by the clear glass panel, and that this space was an open and unobstructed doorway. (See reproduction of photographic exhibit in case.)

5. Although plaintiff had previously visited the office and admitted knowledge of the glass panel, including the low ledge at its bottom, at the time of such previous visits (the last visit being six weeks earlier) the desk had been in front of the glass panel and the door had been closed and she had not previously had occasion to start to leave the office from the position in front of the clear unmarked and unobstructed glass panel, with the "propped open" adjacent door, so as to receive the deceptive impression of open space at that location.

We also hold that based upon these facts and circumstances the jury could properly find that by the exercise of reasonable care defendant should have realized that after moving the desk from in front of

the window, "propping" the door open and leaving it open, so as to leave nothing in front of this clear glass panel, there was a deceptive appearance of open space resulting in an unreasonable risk of harm to invitees in its office (to paraphrase Restatement of Torts 2d § 343), thus imposing upon defendant the duty to exercise reasonable care to protect such invitees against the conditions which created the danger, as, for example, by the placing of something else in front of the clear glass panel or by placing curtains across or decals upon it. Similarly, we hold that based upon these same facts and circumstances the jury could also properly find that this was not a danger which was "known and obvious" to plaintiff on the day of the accident (to paraphrase Restatement of Torts 2d § 343A), but that the conditions were such on that day as to present a deceptive appearance of open space, and that plaintiff was not guilty of contributory negligence despite her previous visits to the office more than six weeks earlier and at times when the conditions were substantially different.[10]

It follows that the trial court did not err in denying defendant's motions for a judgment of involuntary nonsuit and for a directed verdict.

*Other assignments of error.*

■ Defendant also contends that the trial court erred in permitting plaintiff on the second day of trial to file a third amended complaint containing a new specification alleging negligence "in failing to place a decoration, tape, bar or similar item on said glass to make it plainly visible," and in later denying de-

---

[10] See Mickel v. Haines Enterprises, Inc., 240 Or 369, 376, 400 P2d 518 (1965), and Burton v. Abbett Tinning & Roofing Co., 120 Or 536, 540-41, 252 P 973 (1927). See also 2 Restatement 219 Torts 2d § 343A, comment b, and Annot., 35 ALR3d 230.

fendant's motion to strike that allegation. Defendant says that "[t]his was in fact a pleading of a special duty to warn and was a new issue which took defendant by complete surprise." Defendant also contends that the allegations of this new specification were taken from the Uniform Building Code which was not applicable in this case, and that there was no duty to give such a warning because the danger was obvious and apparent.

In moving to strike that allegation, however, defendant made no claim of surprise, but only that there was "no duty to do that." The complaint already alleged negligence "[i]n failing to warn plaintiff of said dangerous condition." While it may be that defendant would have had no duty to give such a warning if the danger in this case were "obvious and apparent," the jury was entitled to find, under the facts and circumstances of this case, that there was a danger which was not "obvious and apparent."

Under these circumstances, the allegation of failure to give such a warning was not improper and in the absence of any further showing of prejudice the trial court did not abuse the discretion conferred upon it relating to the allowance of amendments to the pleadings during trial. Cf. *Von Bergen v. Kuykendall,* 240 Or 191, 193, 400 P2d 553 (1965), and *Morrill v. Rountree,* 242 Or 320, 325, 408 P2d 932 (1966).

■ Defendant also contends that the trial court erred in allowing plaintiff's attorney to inquire on direct examination about defendant's knowledge of the Uniform Building Code, which had previously been ruled inadmissible.

Aside from the question of whether knowledge of the provisions of the Uniform Building Code would

have been admissible on the issue of knowledge of the danger, and despite the inadmissibility of the building code itself in this case, an examination of the record shows that defendant made no objection to these questions until after several questions and answers on this subject, which defendant did not move to strike, and therefore, there is no ruling to review and no error properly before us for consideration. *Edgen v. Reissner,* 239 Or 212, 221, 396 P2d 564 (1964).①

Finally, defendant contends that the trial court erred in permitting plaintiff to offer testimony concerning defendant's corporate relationship with several glass companies, so as to provide the basis for an inference that defendant had special knowledge about glass and should have known that the crystal glass panel constituted a dangerous condition.

Again, however, the only objection to this testimony was that when plaintiff's counsel asked when the first company was formed as a part of the Edwards Industries Group (not a glass company) defendant objected by stating that "this would be irrelevant, [t]he only question is concerning the defendant Edwards Realty Company." Thereupon, and after inquiring about that first company, plaintiff's counsel went on to ask a series of questions about the acquisition of several glass companies, with no further objection whatever.

■■. We agree that under *Noteboom v. Savin,* 213 Or 583, 589, 322 P2d 916, 326 P2d 772 (1958), a proper

---

① Defendant says this case is not in point and that defendant was granted a continuing objection to this testimony, citing Noteboom v. Savin, 213 Or 583, 589, 322 P2d 916, 326 P2d 772 (1958). In this case, however, neither the objection to these questions nor the request for a continuing objection were made until after the objectionable questions had been asked and answers given.

and sufficient objection, once made and overruled, need not be repeated to further questions relating to the same class of evidence. Here, however, it is at least arguable whether the original objection to testimony relating to the organization of the first company in the Edwards Group related to the same "class of evidence" as the subsequent testimony relating to the later acquisition of several glass companies. This is at least arguable from the standpoint of calling to the attention of the trial judge the basis and reason for the objection so that he might properly consider and rule on the objection as applied to evidence relating to the acquisition of glass companies, in view of plaintiff's contention that such evidence was relevant to the issue of knowledge of the danger in this case. Under this state of the record, we hold that there was no reversible error.

Finding no error, the judgment of the trial court is affirmed.