Argued November 3, affirmed December 14, 1972

STOCKING, *Respondent, v.* SUNSET SQUARE, INC., *Appellant.*

504 P2d 100

*Darrel L. Johnson,* Portland, argued the cause for appellant. With him on the briefs were Bullivant, Wright, Johnson, Pendergrass & Hoffman, and James L. Knoll, Portland.

*George M. Joseph,* Portland, argued the cause for

respondent. With him on the brief were Bemis, Breath-ouwer & Joseph, Portland, and Reiter, Wall & Bricker, P.C., and Carlton R. Reiter, Portland.

TONGUE, J.

This is an action for personal injuries sustained by plaintiff when she fell after stepping into a "depression" in the parking lot of defendant's shopping center. The jury returned a verdict for plaintiff. Defendant appeals from the judgment on that verdict. We affirm.

Defendant's primary contention is that the trial court erred in denying defendant's motion for nonsuit and directed verdict because: (1) "[t]here is no evidence that the depression which allegedly caused Plaintiff's fall * * * was either caused by the Defendant or its existence known by the Defendant prior to Plaintiff's fall," and (2) "* * * there is no evidence that a parking lot owner exercising reasonable care would have discovered that depression and had time to protect the Plaintiff from any possible harm which might be caused by that condition."

Defendant concedes that the law controlling the disposition of this case is as stated in 2 Restatement 215-16 Torts 2d § 343, which provides that:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger."

Defendant was the owner of the shopping center, including an asphalt paved parking lot, which was opened in August 1969. Defendant's manager testified that "depressions" sometimes appear in such parking lots when the soil under the asphalt paving erodes and "drops away." He also testified that in February 1970, after having "problems" with such "depressions," defendant had the lot patched, but that between then and the date of this accident more "depressions" appeared, at least some of which were "jagged and ragged."

By letter dated November 2, 1970, Safeway, as one of defendant's tenants, wrote a letter to defendant requesting that various items be "corrected," including "[r]epair deteriorating asphalt areas throughout parking lot."

After receiving that letter defendant, on November 10, 1970, wrote to the general contractor which had constructed the parking center, enclosing the Safeway letter and asking it to "make an inspection of these items for us and advise * * *." No repairs were made, however, until after plaintiff's accident on December 19th.

Defendant's manager also testified that he had inspected the parking lot two days before the accident, but denied prior knowledge of "this particular depression" and said that such "depressions" are common to parking lots of this type and sometimes develop "overnight."

According to testimony offered by plaintiff, however, the "depression" which later caused plaintiff's fall was observed by an employee at one of the

establishments in the shopping center at least one week prior to the accident.

Plaintiff testified that upon coming out of the laundromat in the shopping center with a large box of clothes, she balanced the box against the rear of her car and then stepped sideways into the "depression" and fell on her back. After she fell she observed the "depression" as being about the size of a soup plate, "the edges being ragged," and "tapering down" to a center about three inches deep. That same night her husband also examined it and testified that "the asphalt had been broken and had left a round, jagged hole" about "an inch-and-a-half at the outer edge and * * * deeper in the center." He also took a photograph of the "depression," which was offered in evidence.

Defendant offered evidence to the contrary and contended that:

"The record is void of any evidence of the size and shape of the depression which pre-existed Plaintiff's fall. Thus a trier of facts could not conclude that the depression which existed for one week before the Plaintiff's fall was unreasonably dangerous before the fall."

We hold, however, that based upon plaintiff's evidence, and giving plaintiff the benefit of all reasonable inferences from that evidence, as we are required to do in such a case,[1] the jury could properly and reasonably infer and find that this and other "depressions" in defendant's parking lot existed a sufficient period of time prior to the accident, and were then of such a nature, that defendant, by the exercise of reasonable care should have "discover[ed] the condition

---

[1] Cronn v. Fisher, 245 Or 407, 416, 422 P2d 276 (1966).

[including this 'depression'], and should [have] realize[d] that it involve[d] an unreasonable risk of harm to * * * invitees," such as plaintiff, and that defendant also "fail[ed] to exercise reasonable care to protect them against the danger," within the meaning of 1 Restatement 215-16, Torts 2d § 343, and within the rule as previously adopted by this court in *Dawson v. Payless for Drugs,* 248 Or 334, 339-40, 433 P2d 1019 (1967), and recently reaffirmed in *Scott v. Allen C. Edwards Realty Co.,* 263 Or 464, 503 P2d 1242 (1972). See also 2 Wigmore on Evidence (3d ed 1940) 413, § 437.

Defendant also complains of the failure of the trial court to give certain instructions requested by it. We have examined the requested instructions, as well as those given by the trial court, and hold that the trial judge did not err in refusing to give any of defendant's requested instructions.

The verdict and judgment of the trial court is affirmed.