Argued June 10, affirmed July 12, 1977

KATTER, *Respondent,*

*v.*

JACK'S DATSUN SALES, INC., *Appellant.*

(TC 90175, SC 24733)

566 P2d 509

Janice M. Stewart, Portland, argued the cause for appellant. With her on the briefs was John R. Faust, Jr., Portland.

Bruce W. Williams, of Williams, Spooner & Graves, Salem, argued the cause and filed the brief for respondent.

Before Denecke, Chief Justice, and Howell, Linde and Campbell, Justices.

CAMPBELL, J., Pro Tempore.

**CAMPBELL, J.,** Pro Tempore.

The plaintiff filed an action to recover for personal injuries sustained while on the defendant's business premises. The complaint alleged that the plaintiff, on September 30, 1974, was a business invitee and that he fell and broke his leg because of the dangerous condition of the walkway into the defendant's service department. The jury awarded the plaintiff damages in the sum of $47,927.

The defendant has appealed and its assignments of error present the following questions: (1) Was the instruction that the plaintiff was entitled to recover for the impairment of future earning capacity supported by sufficient evidence? (2) Was the instruction on the defendant's breach of duty to invitees supported by sufficient evidence? (3) Did the trial court properly deny the defendant's motion for a directed verdict?

As to questions of fact, our review is limited by Oregon Constitution, Art VII (Amended), § 3: "* * * [N]o fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict. * * *" By the defendant's own designation, each of its assignments of error involves the question of the sufficiency of the evidence. The evidence must be viewed in the light most favorable to the plaintiff, and the plaintiff is entitled to the benefit of every reasonable inference which may be drawn therefrom. *Scott v. Mercer Steel/Edwards Realty,* 263 Or 464, 503 P2d 1242 (1972). We must view the evidence in the light most favorable to the plaintiff, despite contradictory evidence offered by the defendant. *Atlas Hotel Supply v. Baney,* 273 Or 731, 543 P2d 289 (1975).

The jury in this case could have found from the evidence the following facts:

The plaintiff has suffered from limb-girdle muscular dystrophy since 1959. Before the accident in issue

in this case, the plaintiff had walked with a "halting gait" common to people with muscular dystrophy and had worn a leg brace since a previous injury in 1967. However, prior to the accident in question, the plaintiff was mobile and able to get around without assistance. At that time he did not need crutches, could negotiate stairs without assistance, did not need help to get out of a chair, and often drove his vehicle from Dallas to Salem and Portland on business.

On the day of the accident, the plaintiff parked his pickup truck approximately ten feet from the door of the defendant's service building. The plaintiff got out of the pickup and after a brief conversation with the defendant's service manager, William R. Grimmett, started to follow Grimmett into the service building. As the plaintiff started to step forward, his left foot caught against an obstruction in the asphalt and he fell forward with his head and shoulders landing inside the entrance to the service building. As a result of the fall the plaintiff suffered a plateau fracture of the tibia and a fracture of the fibula of the left leg.

The obstruction in the asphalt was a trench or indentation which was created by the laying of an air pipe from one service building to another. The air pipe had been laid some 13 months before the plaintiff's accident. The trench was about 18 inches wide. There was a lip on the edge of the trench. No witness estimated the height of this lip, but there was testimony that it was 18 inches wide.[1]

There was a mat in front of the door to the defendant's service department. The plaintiff's legs were entangled in this mat after the fall. At the time of the plaintiff's fall the door mat partially covered the obstruction in the asphalt.

_____

[1] We presume the witness meant and the jury understood that the lip was 18 inches long at the point where the plaintiff's foot caught on the obstruction. We believe this to be a reasonable inference. There were four photographs of the trench or indentation in the asphalt received in evidence.

After the fall the plaintiff's left leg was placed in a cast for a period of approximately three months. The plaintiff was hospitalized for a period of two or three days and then confined to a wheelchair for approximately four months.

The treating doctor testified that plaintiff had suffered a permanent disability in that there was an aggravation or exacerbation of muscular dystrophy. Keeping the leg in a cast for several weeks added to the ongoing weakness of the plaintiff's muscles.

Since the accident the plaintiff has lost some of his mobility. Now he cannot negotiate steps without help, depends upon the use of crutches and wheelchairs, and generally has problems in public restrooms and restaurants.

A short time before the accident, the plaintiff had invented a gold mining machine and had started a business with two machinists to construct and market the machine. The business sold its first machine a month before the accident. After the plaintiff returned to work, the business marketed 24 machines in the next six months. Prior to the accident, the plaintiff was able to drive to and from work, stand at a drill press and lay out design for his invention. After the accident the plaintiff can no longer perform these mechanical tasks.

The defendant in its first assignment of error claims that the trial court should not have instructed on the impairment of future earning capacity:

"[THE COURT] * * * If you find that plaintiff is entitled to recover, you're first to determine the amount of general damages suffered by the plaintiff. * * *

"* * * * *

"* * * The items of general damages which you may consider are * * *;

"Two: The sum which will reasonably compensate plaintiff for any impairment of earning capacity plaintiff has sustained in the past and which it is reasonably probable plaintiff will sustain in the future."

[ 165 ]

The defendant argues that the plaintiff's work was essentially managerial and intellectual and therefore falls within the exception of *Creel v. Shadley,* 266 Or 494, 500, 513 P2d 755 (1973):

> "The court should not have instructed on impairment of future earning capacity. Impairment of future earning capacity does not necessarily result from a permanent injury. A person may have an injury which meets the definition of a permanent injury and still not suffer any loss of future earning capacity. * * *"

The plaintiff counters by saying that his situation fits the general rule of *Tavenner v. Figini,* 273 Or 415, 417, 541 P2d 437 (1975):

> "In the ordinary case, and as a general rule, evidence that a plaintiff has sustained a permanent injury is sufficient to entitle him to submit to the jury the question whether there has been an impairment of his future earning capacity. *Holder v. Petty,* 267 Or 94, 99, 514 P2d 1105 (1973). See *Smith v. Jacobsen,* 224 Or 627, 638, 356 P2d 421 (1960).

> "The case of *Creel v. Shadley,* 266 Or 494, 513 P2d 755 (1973), relied upon by defendants, represents an exception to that rule. In that case we held that the loss of some teeth, replaced by partial plates, did not interfere with plaintiff's earning capacity in the work in which he was engaged."

■ We agree with the plaintiff. There is evidence that the plaintiff suffered a permanent injury plus additional testimony from which the jury could have inferred that there was an impairment of future earning capacity.

■ The defendant's second assignment of error alleges the trial court should not have given the following instruction on breach of duty to invitees:

> "[THE COURT] A possessor of land is subject to liability for physical harm to his invitee caused by a condition of land if he first knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitee; and second, he should expect that they will not discover or realize the danger or will fail to protect

themselves against it; and third, fail to exercise reasonable care to protect the invitee against the danger."

The above instruction is based on 2 Restatement of Torts 215-16, § 343 (1965). This is the law in Oregon. *Stocking v. Sunset Square, Inc.,* 264 Or 151, 504 P2d 100 (1972). The defendant agrees that the instruction is a correct statement of the law, but argues that it should not have been given in this case because "the plaintiff failed to submit any evidence that the defendant breached the duty described in the instruction, nor any evidence that any negligence caused the accident."

The defendant's third assignment of error is that the trial court erred by denying the motion for a directed verdict. The defendant says that the same reasons apply to the second and third assignments of error and therefore combined them for argument.

In the context of this case, a paraphrase of 2 Restatement of Torts, § 343, reads:

The defendant is subject to liability for physical harm caused to the plaintiff by the condition of its walkway to its service department if, but only if, it

(1) knew * * * the condition, and should have realized that it involved an unreasonable risk of harm to the plaintiff, and,

(2) should have expected that the plaintiff would not discover or realize the danger, or would fail to protect himself against it, and

(3) failed to exercise reasonable care to protect the plaintiff against the danger.

■ It would seem that parts (2) and (3) above are satisfied because the obstruction in the asphalt walkway was partially covered by the mat and the defendant failed to warn the plaintiff by word or sign. Further, the defendant failed to repair the obstruction.

■ As to part (1), the defendant knew of the condition of the asphalt walkway—the trench resulted from the laying of the air pipe over a year before the plaintiff's accident. By the process of elimination, the only question remaining is: Should the defendant have

[ 167 ]

realized that the obstruction involved an unreasonable risk of harm to the plaintiff? This is strictly a jury question. There were testimony and photographs received in evidence as to the size, shape and location of the lip of the trench. This court cannot say as a matter of law that the risk of harm in this case was greater or less than the situations in cases like *Stocking v. Sunset Square, Inc., supra, Eck v. Market Basket,* 264 Or 400, 505 P2d 1156 (1973), and *McVaigh v. Sandberg,* 266 Or 409, 513 P2d 801 (1973).

A case should be taken from the jury only when the facts are such that only one conclusion can be drawn from them. As the court said in *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 469 P2d 783 (1970):

"* * * The jury is given a wide leeway in deciding whether the conduct in question falls above or below the standard of reasonable conduct deemed to have been set by the community. The court intervenes only when it can say that the actor's conduct clearly meets the standard or clearly falls below it." 255 Or at 607.

*See also Jacobs v. Tidewater Barge Lines,* 277 Or 809, 562 P2d 1545 (1977).

The judgment of the trial court is affirmed.