Argued and submitted October 5, Court of Appeals reversed and remanded to trial court for new trial December 29, 1981

## NYLANDER,
*Petitioner on Review,*

*v.*

## STATE OF OREGON,
*Respondent on Review.*

(TC 25729, CA 17171, SC 27786)

637 P2d 1286

Robert S. Gardner, Corvallis, argued the cause and filed brief for petitioner on review. With him on the brief were Ringo, Walton, Eves & Gardner, P.C.

William F. Gary, Deputy Solicitor General, Salem, argued the cause for respondent on review. With him on the brief were James M. Brown, Attorney General and John R. McCulloch, Jr., Solicitor General, Salem.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson, and Tanzer, Justices.

LINDE, J.

Peterson, J., filed a concurring opinion.

## LINDE, J.

Plaintiff is the personal representative of the estate of Rachel Gretz, who was killed in an automobile collision on an icy bridge on a state highway. Plaintiff brought an action for damages under the Oregon Tort Claims Act, ORS 30.260 - 30.300, charging the state with negligence in failing to sand the surface of the highway and bridge and failing to post warnings of the icy conditions. After a verdict for defendant, plaintiff appealed upon the sole ground that the trial court erred in instructing the jury that the state had no duty to post warning signs if the decedent knew or should have known of the icy condition of the bridge. The Court of Appeals affirmed, 51 Or App 413, 625 P2d 1354 (1981), and we allowed review to examine whether the instruction misstated the relationship between a motorist's awareness of the risk and the state's duty and potential liability. We reverse and remand for a new trial.

There was evidence of the following facts. Traveling north on Highway 99W shortly before 11:00 a.m. on November 15, 1978, the automobile driven by Rachel Gretz skidded on the surface of a highway bridge and collided with a southbound vehicle in the opposite lane. Conditions were icy throughout the surrounding area, on the highway and on the bridge. Personnel of the state's highway maintenance section in the area had anticipated freezing and icy conditions at 7:30 that morning, and trucks were sent out to sand danger spots. Freezing rain and sleet began at about 8:15 a.m. One of the maintenance trucks put sand on the bridge involved at 9:00 a.m. and at 10:00 a.m. There was testimony that the bridge surface remained icy and slicker than the immediately adjoining highway surface. Some distance north and south of the bridge two permanent highway signs had been installed for the purpose of warning motorists of "ICE," designed with a hinged surface so that they could be opened to display the warning message. These signs were not opened when the bridge was sanded and were still closed at the time of the fatal accident, nor were portable warning signs placed at the bridge.

No issue was made on appeal with respect to plaintiff's allegation of negligent failure to sand the surface. The only assignment of error concerns the jury instruction

on the allegation of negligent failure to warn. This instruction was phrased, in relevant part:

"Secondly, members of the jury, the Plaintiff charges the Defendant with negligence in knowing or having reason to know of the condition of the highway and bridge at a time—at the time and place and did fail to post suitable warnings of the conditions of the highway and bridge.

"In that connection, members of the jury, I instruct you that if you find that the decedent either knew or reasonably should have known of the nature and extent of the danger from the icy condition of the bridge at the time and place of the accident, then the State was under no duty to post warning signs of ice on the bridge and failure to post would not be negligence."

Plaintiff took exception to this instruction on the grounds that defendant's duty to warn did not depend on the individual motorist's knowledge of the dangerous condition, that the instruction as given made a defense of contributory negligence, and that it stated a defense of assumption of the risk. These objections to the challenged instruction are well taken.

The instruction erred in its statement of the state's duty to warn in two respects. First, the instruction was not a statement of the state's duty to warn. Rather, it told the jury one condition under which the state would have no duty to warn; it gave no explanation under what conditions the state would have a duty to post warnings. The predictable impact on a listener hearing the negative instruction is to focus attention on circumstances that would negate rather than those that give rise to a duty.

More broadly, apart from its negative form, the instruction illustrates the difficulties that arise because the word "duty" is sometimes used in tort law in a sense different from common understanding. In ordinary usage persons often have a duty—that is to say, they are required by law—to conduct an activity in a certain way quite apart from liability to the particular, or to any, plaintiff. Legal theorists, however, often use "duty" to describe the legal premise of a defendant's potential liability in relation to a particular plaintiff or class of plaintiffs. *See, e.g.,* Prosser, Torts (4th ed 1971) 324. As Dean Prosser pointed out, this

ambiguity of the term "duty" has troubled the law of torts at least since the opposing opinions in the *Palsgraf* case.[1] *Id.* at 254. When "duty" is used in this second fashion to describe that, under otherwise identical circumstances, one may have a "duty toward" some persons but no "duty toward" other persons to meet certain standards of conduct, the term serves rather circularly to state a conclusion about a lawsuit by a person injured by substandard conduct, but it does not describe one's duty in the ordinary sense of obligatory conduct apart from the existence or characteristics of a particular plaintiff.

The ambiguity of "duty" may make no difference in instructing a jury when the context involves only a defendant's specific conduct in relation to the actual plaintiff. Even then, it may well be better simply to instruct that if the jury finds that specified conditions existed, it must decide whether the defendant's conduct fell short of the required standard of conduct, without making the jury decide on the presence or absence of "duty" as an intermediate step. Duty, after all, is law, not fact. But the term causes difficulty when an instruction, as in this case, refers to the state of mind of a particular plaintiff in defining for the jury what precautions a defendant was obliged to take before this or any potentially endangered person appeared on the scene.

In the present case, for instance, whatever duty the state had to post warnings on the morning of November 15, 1978 arose from the fact that the road and bridge were open to vehicular traffic generally, from the objective weather and surface conditions at that time, from the degree to which these conditions could be said to be obvious to the general public without a warning and the degree to which additional localized danger exceeded what was generally obvious, and perhaps from such additional obligations as the state may have undertaken by its own stated rules or guidelines on the subject.[2] *Cf. Daugherty v. State Highway*

---

[1] *Palsgraf v. Long Island R. Co.*, 248 NY 339, 162 NE 99 (1928).

[2] In the lower courts the parties debated, in part, whether the state's liability depended on the obligations of an occupier of land, *see* Restatement (Second) Torts, § 343A (1965), but its obligation to warn of traffic hazards in the course of performing the function of directing or regulating public travel need not be

*Comm.,* 270 Or 144, 526 P2d 1005 (1974).[3] But that duty would not depend on a particular motorist's personal awareness of the extent of the danger at the exact time and place of the accident, as the instruction said. Rather, the state's duty to warn of localized or temporary dangers must be considered with respect to the risk that they pose generally to the kinds of motorists expected on the road in issue.

Some roads or similar facilities are expected to be used predominantly by persons engaged in a trade or occupation who have greater than ordinary skill and experience and who use specialized or heavy duty equipment, such as trucks or four-wheel drive vehicles on a logging road, or skis on a ski run, as in *Blair v. Mt. Hood Meadows Dev. Corp.,* 291 Or 293, 630 P2d 827 (1981). Other facilities may have heavy use by persons known to be inexperienced, or inattentive, or vulnerable, for instance school children or old or handicapped people. A duty to warn presupposes some relevant person or persons, known or unknown, to be warned, and the conditions that give rise to the duty include the foreseeable characteristics of these persons. Major highways such as Highway 99W are intended and known to be used by the general public. It is foreseeable that the users will include a cross-section of the kinds of persons and the kinds of vehicles licensed for that very purpose, skilled drivers and those less skilled, stable and

---

derived from the state's property interest in the road or bridge. *Cf. Ragnone v. Portland School Dist. No. 1J,* 291 Or 617, 633 P2d 1287 (1981).

The state also referred below to an "underlying policy" of the state with respect to warning signs which should be deemed discretionary and immune under ORS 30.265(3)(c), as distinct from negligent implementation of the policy, which would not be immune. The state apparently intended the challenged instruction to relate to its theory of immunity, but the instruction wholly fails to do so.

[3] Plaintiff in *Daugherty* similarly alleged both a failure to "discover and alleviate the slick and icy condition of the bridge" and failure to warn of the hazard. The court stated that defendant might be found liable if there was evidence that the state's employees knew or should have known of the icy condition "and had sufficient time to take remedial action which might have prevented this accident," without elaborating on different kinds of "remedial action." When severe conditions make a road impassable or extremely hazardous, it is not uncommon for remedial action to go beyond sanding and warning to requiring tire chains or closing the road entirely. But the court found in *Daugherty* that there was no evidence to support the jury verdict.

easily controlled vehicles and those less easily controlled. So, at least, a jury might conclude.

It can be argued that when the instruction referred to what Rachel Gretz "knew or reasonably should have known," the words "reasonably should have known" put to the jury the objective test whether the hazardous conditions were so obvious to any reasonable driver that no official warning was called for. That was the view on which the Court of Appeals sustained the instruction. Even so, the instruction would be inexact, because, as stated above, the term "reasonable" does not accurately describe the class of foreseeable motorists for whose benefit a warning is required. As stated above, that requirement arises from the characteristics of any substantial fraction of the population expected to encounter the danger, which may include a substantial proportion who are not "reasonably" attentive, alert, or knowledgeable about driving on icy surfaces. Their failure to act "reasonably" under the circumstances bears on their partial or entire loss of a recovery by reason of contributory fault, ORS 18.470, but this is not identical to the issue whether a warning should be posted in the first place.

Although the instruction purported to address the latter issue, insofar as it asked the jury to consider what Gretz actually knew when she drove onto the bridge, it could well be understood to state a defense of implied assumption of the risk that was abolished by ORS 18.475. That defense cannot be revived by being restated as an absence of duty toward plaintiff, as in this instruction. *Thompson v. Weaver,* 277 Or 299, 560 P2d 620 (1977). Insofar as the instruction asked the jury to decide what she "reasonably" should have known when she did so, it could be understood to state a defense of contributory negligence. But any contributory negligence on her part would be relevant only as "comparative fault" under ORS 18.470, whether or not it is the kind of negligence that before ORS 18.475 was described as implied assumption of the risk. *See Blair v. Mt. Hood Meadows Dev. Corp., supra; Baccelleri v. Hyster Co.,* 287 Or 3, 597 P2d 351 (1979).[4]

---

[4] Another possible defense, that even a negligent failure to warn is not the cause of an injury to one who is fully aware of the danger, is not involved in this appeal.

We therefore conclude that the instruction likely misled the jury about the significance of decedent's knowledge for the existence and extent of defendant's responsibility. Plaintiff is entitled to the jury's conclusion upon a proper separation of the questions bearing on each party's possible fault and its contribution to the fatal collision. The case must be remanded for a new trial.

Reversed and remanded.

**PETERSON, J.,** concurring.

The prosaic facts of this case—an accident involving a motorist traveling across an icy bridge—compel consideration of the difference between the articulation of proper instructions concerning the defendant's duty of care to the plaintiff and the motorist's duty of care for herself. The trial court instructed the jury that there was no duty to warn if "the decedent either knew or reasonably should have known of the nature and extent of the danger from the icy condition of the bridge * * *." In that form, the instruction was improper for the reasons set forth on pages 257-260 of the majority opinion, and further, because it failed to include the exception set forth in *Dawson v. Payless for Drugs,* 248 Or 334, 433 P2d 1019 (1967), that the state might be liable even if the motorist was aware of the unreasonably dangerous condition if the state "* * * should anticipate the harm despite such knowledge or obviousness." 248 Or at 338. *Dawson* involved a situation in which the plaintiff slipped and fell on the icy surface of the defendant's parking lot. The plaintiff was aware that "it was icy and slick all over," and nonetheless proceeded to encounter the hazard. The trial court had nonsuited the plaintiff. We reversed, relying in part upon a then-recent revision to the Restatement of Torts (Second) contained in section 343A, which provides:

"(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness."* (Emphasis added.)

In reversing the trial court, we quoted from comment *f,* Restatement of Torts (Second) at 220, as follows:

"There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm." 248 Or at 338.

We expressly overruled several cases in which we had held that if plaintiff has knowledge of the encountered danger, defendant owed the plaintiff "no duty." 248 Or at 339.

The second vice of the instruction given by the trial court is more subtle and somewhat more difficult to articulate and understand. Both here and in the trial court, the parties have compared the defendant's potential liability in this case with the liability of an occupier of premises. I, too, will draw upon that analogy.[1] It has been stated that an occupier of premises should warn of hazards existing thereon if persons using the premises would not discover or realize the danger and risk involved. *Katter v. Jack's Datsun Sales, Inc.*, 279 Or 161, 566 P2d 509 (1977); Restatement of Torts (Second) §§ 342 and 358. Under such a rule, the liability of the occupier of premises for failure to warn was said to turn upon the knowledge, actual or constructive, of persons using the premises. For example, the concurring opinion in *Blair v. Mt. Hood Meadows Development Corp.*, 291 Or 293, 306-308, 630 P2d 827 (1981), states:

"* * * In many situations the boundaries of the defendant's duties to the plaintiff and the boundaries of the plaintiff's own duty of due care turn upon the knowledge of potential harm which a reasonably prudent person in the plaintiff's position would have under the same or similar circumstances. For example, in *Katter v. Jack's Datsun Sales, Inc.*, 279 Or 161, 566 P2d 509 (1977), we approved the giving of this instruction:

---

[1] *Compare* Restatement of Torts (Second) § 343A(2) which provides:

"In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated."

" ' "A possessor of land is subject to liability for physical harm to his invitee caused by a condition of land if he first knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitee; and second, he should expect that *they will not discover or realize the danger or will fail to protect themselves against it;* and third, fails to exercise reasonable care to protect the invitee against the danger." ' 279 Or at 166-167.

"* * * * *.

"In such a case, the same factor—whether a person in the plaintiff's position would be aware of the danger—may well determine (1) whether the defendant had a duty to warn, and (2) whether the plaintiff would be contributorily at fault for failure to keep a proper lookout or for unreasonably exposing oneself to hazards which were known to the plaintiff or for otherwise failing to recognize the risk of harm." (Emphasis added.)

In part due to the advent of comparative fault, the articulation of proper instructions concerning the defendant's duty to the plaintiff and the plaintiff's duty to himself or herself are not necessarily opposite sides of the same coin. The majority are correct in saying that "* * * the state's duty to warn of localized or temporary dangers must be considered with respect to the risk that they pose generally to the kinds of motorists expected on the road in issue." 292 Or at 259. The "kinds of motorists expected on the road" may include all types of licensed motorists. In more than an academic sense, the defendant's duty to warn is not necessarily determined by the knowledge, actual or constructive, of the reasonably prudent person in the plaintiff's position, but rather, upon the knowledge, actual or constructive, of the kinds of motorists using the highway. The state licenses all types of drivers, including persons with disabilities whose disabilities do not prevent them from exercising "reasonable and ordinary control" over their vehicle. ORS 482.130. In some cases, the hypothetical reasonably prudent person may not be identical with either the hypothetical reasonably prudent licensed driver or the hypothetical reasonably prudent motorist expected on the road in issue. In short, the duty to warn is not necessarily determined by the knowledge, actual or constructive, of the

"reasonably prudent person."[2] As the majority opinion points out, in some cases that may include a proportion who are not "* * * 'reasonably' attentive, alert, or knowledgeable about driving on icy surfaces."

The defendant's liability for negligence arising from a failure to warn is not determined by the fault of the plaintiff, and instructions relating to the defendant's negligence should not be so structured. However, in gauging the motorist's contributory fault, as to constructive knowledge of the hazard, the motorist's conduct is judged against the standard of the reasonably prudent person. As to actual knowledge, we look to the actual knowledge of the plaintiff.

Instructions relating to the defendant's negligence arising from an alleged failure to warn are not to be equated with the knowledge, actual or constructive, of the plaintiff. And in some cases, the duty to warn will not be measured by the knowledge, actual or constructive, of the reasonably prudent person, but rather, by the knowledge, actual or constructive, of persons having "* * * the characteristics of any substantial fraction of the population expected to encounter the danger." Under the facts of this case, the defendant would be negligent for failure to warn if the following elements existed:

1. The use of the highway, in its then-condition, was dangerous to drivers using the highway.

2. The state knew or by the exercise of reasonable care could have discovered the danger.

3. The hazards of use would not be known or obvious to the reasonably prudent licensed driver possessing the minimal qualifications required of a licensed driver in Oregon; or, if the condition was one which, even if

---

[2] In many situations involving a claim of failure to warn, the reasonably prudent person standard may be appropriate. But not invariably. Problems may arise in instructing the jury as to the defendant's duty to persons under a disability or as to a defendant who has a physical disability. *See* L. Green, *The Negligence Issue,* 37 Yale L J 1029, 1033-1043 (1927-1928); F. James, Jr., *The Qualities of the Reasonable Man in Negligence Cases,* 16 Mo L Rev 1, 21 (1951); J. tenBroek, *The Right to Live in the World; The Disabled in the Law of Torts,* 54 Cal L Rev 841, 865-876 (1966). *See also, Weinstein v. Wheeler,* 127 Or 406, 271 P 733 (1928).

known or obvious to such a motorist, the state had reason to expect that the motorist would proceed to encounter the known or obvious danger.

4. The state had an opportunity to warn of the risk and failed to do so.