Argued and submitted April 10, the decision of the Court of Appeals affirmed in part and reversed in part; the judgment of the circuit court affirmed in part and reversed in part and remanded to the circuit court for further proceedings September 20, 1990

The YAMAHA STORE OF
BEND, OREGON, INC.,
dba "The Yamaha Store,"
*Respondent on Review,*

*v.*

YAMAHA MOTOR CORPORATION, U.S.A.,
*Petitioner on Review,*

Benjamin H. JACQUES, Jr.,
and Phillippe D. Jacques,
dba Bend Yamaha Snowmobile,
*Defendants.*

YAMAHA MOTOR CORPORATION, U.S.A.,
*Counterclaim Plaintiff,*

*v.*

Robert A. NOSLER
and John A. Nosler,
*Counterclaim Defendants.*

(TC 32901-TM; CA A44218; SC S36613)

798 P2d 656

Peter C. Richter, Portland, argued the cause and submitted the petition for petitioner on review. With him on the petition were Jeffrey D. Austin and Miller, Nash, Weiner, Hager & Carlsen, Portland.

Ronald L. Marceau, Bend, argued the cause and filed the response for respondent on review. With him on the response were David F. Berger and Marceau, Karnopp, Petersen, Noteboom & Hubel, Bend.

Before Peterson, Chief Justice, and Carson, Jones,** Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

VAN HOOMISSEN, J.

---

** Jones, J., resigned April 30, 1990.

## VAN HOOMISSEN, J.

Plaintiff, The Yamaha Store of Bend, Oregon, Inc., sued defendant Yamaha Motor Corporation, U.S.A., (Yamaha) for price discrimination, ORS 646.040(1),[1] for breach of contract, and in tort for intentional interference with business and economic relationships.[2] The jury awarded plaintiff a verdict on its price discrimination and breach of contract claims. Judgment was entered trebling the price discrimination award and awarding plaintiff attorney fees and costs.[3] The Court of Appeals affirmed. *Yamaha Store of Bend, Inc. v. Yamaha Motor Corp.*, 98 Or App 290, 779 P2d 1061 (1989).

We allowed review to consider two issues of first impression under Oregon's Anti-Price Discrimination Law: What kind of evidence is legally sufficient to present a factual

---

[1] *ORS 646.040(1) provides:*

"It is unlawful for any person engaged in commerce or food commerce, or both, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities, or services or output of a service trade, of like grade and quality or to discriminate in price between different sections, communities or cities or portions thereof or between different locations in sections, communities, cities or portions thereof in this state, where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them."

[2] Yamaha's cross-claims against defendants Jacques were settled before trial. Plaintiff's claim against defendants Jacques was dismissed by plaintiff. On Yamaha's counterclaim against plaintiff for unpaid parts, plaintiff and Yamaha stipulated before trial that $29,391 would be credited to Yamaha against any judgment in plaintiff's favor.

[3] *ORS 646.150 provides:*

"If no injunctive relief is sought or required, any person injured by any violation of ORS 646.010 to 646.180 may maintain an action for damages alone in any court of general jurisdiction in this state. The measure of damages in such action shall be the same as that prescribed by ORS 646.140."

ORS 646.140(1) provides:

"Any person injured by any violation, or who will suffer injury from any threatened violation, of ORS 646.010 to 646.180 may maintain an action in any court of general equitable jurisdiction of this state, to prevent, restrain or enjoin the violation or threatened violation. If in such action, a violation or threatened violation of ORS 646.010 to 646.180 is established, the court shall enjoin and restrain or otherwise prohibit such violation or threatened violation, and the plaintiff in the action is entitled to recover three-fold the damages sustained by the plaintiff, and the costs of suit and a reasonable attorney fee at trial and on appeal."

issue of competition, and what is the proper measure of damages under the "such further damages" provision of ORS 646.160?[4] We conclude that plaintiff presented sufficient evidence to present a factual issue of competition and that the trial court, therefore, did not err in denying Yamaha's motion for a directed verdict on that issue. However, we also conclude that the trial court erred in allowing the jury to consider an improper measure of damages and that the judgment as to those damages cannot stand.

Given the jury's verdict for plaintiff, disputed questions of fact have been resolved in plaintiff's favor. *Katter v. Jack's Datsun Sales, Inc.,* 279 Or 161, 163, 566 P2d 509 (1977); *Scott v. Mercer Steel/Edwards Realty,* 263 Or 464, 466-67, 503 P2d 1242 (1972).

Yamaha, the United States distributor for Yamaha motorcycles, published a list of the prices that it charged its dealers for motorcycles. Plaintiff, a retail Yamaha motorcycle dealer from 1978 to 1983, purchased motorcycles, parts, and accessories from Yamaha for resale in Bend, Oregon, and the surrounding area, including Deschutes, Jefferson, and Crook counties.

In June 1982, the largest Portland-area Yamaha dealer went out of business. That dealer had about 550 new 1980, 1981, and 1982 motorcycles in its inventory, which Yamaha repossessed. In July 1982, Yamaha sold those repossessed motorcycles to Beaverton Honda (Beaverton) at prices substantially below Yamaha's regular dealer list prices. Yamaha did not offer to sell any of the repossessed motorcycles at the lower price to plaintiff or to any of its other dealers. Yamaha also provided Beaverton with advantageous credit terms (free "flooring") and advertising support.[5]

---

[4] ORS 646.160 provides:

"In any proceedings instituted or action brought in pursuance of the provisions of ORS 646.140 or 646.150, the plaintiff, upon proof that the plaintiff has been unlawfully discriminated against by the defendant, shall conclusively be presumed to have sustained damages equal to the monetary amount or equivalent of the unlawful discrimination; and, in addition thereto, may establish *such further damages,* if any, as the plaintiff may have sustained as a result of the discrimination." (Emphasis added.)

[5] Yamaha also gave advertising support to its other dealers. Thus, advertising support apparently does not constitute part of plaintiff's price discrimination claim. *See 3 Advising Oregon Businesses* (Oregon CLE 1985) § 65.51 (advertising allowance as price discrimination).

Beaverton then changed its name to Beaverton Honda-Yamaha and became metropolitan Portland's largest Yamaha dealer.

Beaverton then sold the repossessed motorcycles at retail prices close to other dealers' wholesale costs for the same models. Beaverton advertised its low prices extensively in Portland newspapers and on Portland television stations, all of which were readily available to readers and viewers in the Bend area. Plaintiff's customers were aware of Beaverton's lower prices; plaintiff reduced its own prices and, in some cases, sold motorcycles at or below plaintiff's actual cost. Beaverton sold at least two motorcycles to customers with Bend addresses and several others to customers residing in plaintiff's central Oregon market area.

## I.

At trial, Yamaha moved for a directed verdict on plaintiff's price discrimination claim, arguing that as a matter of law plaintiff and Beaverton were not "competitors," a necessary element of an ORS 646.040(1) price discrimination claim. The trial court denied that motion, and the Court of Appeals affirmed that denial. On review, Yamaha contends that the Court of Appeals erred in holding that there was evidence of actual competition between plaintiff and Beaverton.

Yamaha argues that the question of whether Beaverton's competitive market included the Bend area may only be determined by how many actual sales Beaverton made to Bend area residents. Pointing to evidence showing that out of more than 800 sales, Beaverton sold only two motorcycles to Bend residents, Yamaha argues that that evidence establishes as a matter of law plaintiff and Beaverton were *not* competitors. Yamaha also argues that it was not sufficient for plaintiff to show the effects of Beaverton's advertising campaign on plaintiff's competitive position (*e.g.,* that Bend area residents would shop in the Portland area or that they knew about Beaverton's lower prices and expected plaintiff to meet them). Yamaha relies primarily upon *Eastern Auto Distrib. v. Peugeot Motors of America,* 795 F2d 329, 335 (4th Cir 1986) (a few "crossover" sales do not prove actual competition) and other federal cases.[6] We find the cited federal cases inapposite,

---

[6] Federal cases interpreting the Robinson-Patman Act are persuasive authority in interpreting Oregon's Anti-Price Discrimination Law. *Top Service Body Shop v. Allstate Ins. Co.,* 283 Or 201, 217 n 21, 582 P2d 1365 (1978); *Redmond Ready-Mix, Inc. v. Coats,* 283 Or 101, 110, 582 P2d 1340 (1978).

however, because they are concerned with exclusive geographic market areas with defined boundaries. No such clearly defined market areas are involved here.

The rationale behind the requirement for actual competition in the same market area is that if the favored and disfavored buyers, here Beaverton and plaintiff,[7] do not in fact compete for the same customers, there cannot be a reasonable probability[8] of harm to competition. *Lupia v. Stella D'Oro Biscuit Co., Inc.,* 586 F2d 1163, 1170-71 (7th Cir 1978), *cert den* 440 US 982, 99 S Ct 1791, 60 L Ed 2d 242 (1979); *M. C. Manufacturing Co. v. Texas Foundries, Inc.,* 517 F2d 1059, 1066 (5th Cir 1975), *cert den* 424 US 968, 965 S Ct 1466, 47 L Ed 2d 736 (1976); *see* F. Rowe, *Price Discrimination Under the Robinson-Patman Act* 179 (1962) (if buyers on different sides of a boundary line do not compete with each other, no adverse competitive effects at the buyer level follow from the supplier's price variations).

There is no dispute that Yamaha sold 1980, 1981, and 1982 motorcycles to Beaverton at prices significantly lower than the prices Yamaha charged plaintiff for the same models. Furthermore, Yamaha also gave Beaverton advantageous credit terms not given to plaintiff. Beaverton then advertised the sale of its lower priced motorcycles extensively in Portland newspapers and on Portland television stations, media which Yamaha acknowledges in its petition for review are "statewide" media.[9]

---

[7] Price discrimination cases distinguish among the probable impact of the price discrimination on competitors of the seller (primary-line discrimination), on the favored and disfavored buyers (secondary-line discrimination), or on the customers of either of them (third-line discrimination). *See Redmond Ready-Mix, Inc. v. Coats, supra,* 283 Or at 115 n 17; 3 *Advising Oregon Businesses, supra,* § 65.44-65.45; 3 E. Kintner & J. Bauer, *Federal Antitrust Law* § 20.9 at 127 (1983). This is a secondary-line discrimination case.

[8] ORS 646.040(1) requires that a plaintiff prove that a defendant's price discrimination "probably" had the proscribed effect on competition. *Redmond Ready Mix, Inc. v. Coats, supra,* 283 Or at 114.

[9] In *Zoslaw v. MCA Distributing Corp.,* 594 F Supp 1022 (ND Cal 1984), the court denied the defendant's motion for a summary judgment, even though there was no evidence that the plaintiff had actually lost any sales. The court found that there remained an issue of fact as to the competition element, based in part on the fact that the defendant's advertisements reached the plaintiff's market area. The court also relied on statements that the plaintiff's customers would "buy the product at a much lower price at [the defendant's store]" to find that there was an issue concerning the defendant's competitive presence in the plaintiff's market area. 594 F Supp at 1035.

The Honda motorcycle dealer in Bend testified that 75 percent of his competition came from Portland area motorcycle dealers, that Bend area customers compared his prices with those of the Portland area dealers, and that his customers came into his store with *The Oregonian's* classified advertising in hand. He testified that Portland pricing directly affected his own prices because, in order to make a sale, he often had to match Portland dealers' prices.

A former Oregon Yamaha district manager, who had been the Oregon Kawasaki district manager at the time of Yamaha's sale to Beaverton, testified that the predictable effect of Yamaha's sale to Beaverton was to put all other dealers in Beaverton's market at a competitive disadvantage.

One of plaintiff's owners testified that Beaverton's advertising of its lower prices forced plaintiff to lower its own prices. Plaintiff's general manager testified that it was impossible for plaintiff to compete with Beaverton because of Beaverton's advertising and low prices and that although plaintiff's primary sales area was the Bend area, plaintiff nevertheless had to lower its prices to compete with Beaverton.

A Bend resident testified that he had become aware of Beaverton's lower prices from television advertising seen in Bend and that he had bought a motorcycle from Beaverton because of its advertised lower price.

A former Baker, Oregon, Yamaha dealer testified that he, too, had been damaged by Yamaha's 1982 sale to Beaverton. There also was evidence that of twelve Yamaha dealers in northwestern Oregon before the challenged sale to Beaverton, some started closing up within a few months after the sale, and all twelve were out of business by the time this case came to trial.[10]

Plaintiff's expert witness, an economist, testified that the relevant competitive market is wherever the impacts of a price differential are felt; that Beaverton's extensive advertising of its low prices would have an impact on plaintiff; that competition in the Bend area definitely would be

---

[10] Yamaha argues on appeal that there was no evidence at trial that any of those dealers closed because of Yamaha's sale to Beaverton and that other factors contributed to the closures. Although we do not decide that issue, the concurrence in time of those events made such evidence relevant for consideration by the jury.

lessened; and that the effect was a foreseeable, natural, and necessary consequence of Beaverton's extensive advertising of its low prices. He further testified that the foreseeable consequences to plaintiff would include diversion of sales, negative customer relations, and the depressed value of plaintiff's new and used motorcycle inventory. He testified, "The Bend area is reasonably in the Portland [market] area."

Yamaha's own records showed that Beaverton made sales in Oregon to customers from Salem, Albany, Hood River, Madras, Bend, Lakeview, Long Creek, Burns, and Pendleton. In addition to sales in Oregon, Beaverton made sales to customers in Montana, California, Alaska, and Washington. Beaverton's advertisements in *The Oregonian* proclaimed, "We're your #1 in the U.S.A. Yamaha connection."

We agree with the trial court and the Court of Appeals that there was evidence in the record from which a jury could find that the Bend area was part of Beaverton's market; that Beaverton competed with plaintiff for customers from the Bend area; that Yamaha discriminated in the prices it charged Beaverton and plaintiff for 1982 motorcycles; and that such discrimination had the proscribed effect on competition. ORS 646.040(1). The trial court therefore did not err in denying Yamaha's motion for a directed verdict.

## II.

We next consider Yamaha's contention that the Court of Appeals erred in affirming that devaluation of inventory was a proper measure of damages as to plaintiff's inventory of 1980 and 1981 motorcycles (the noncurrent inventory). For the purposes of this assignment of error, Yamaha assumes that plaintiff proved actionable price discrimination as to its inventory of 1982 motorcycles (the current inventory) and therefore is entitled to ORS 646.160 presumed damages for the difference in the price plaintiff and Beaverton paid Yamaha in 1982 for 1982 motorcycles.

At trial, Yamaha moved to strike plaintiff's devaluation evidence, arguing that as a matter of law devaluation of inventory was not a proper measure of damages *as to plaintiff's noncurrent inventory* because plaintiff had in fact sold all of its noncurrent inventory before trial. Yamaha asserted that the proper measure of plaintiff's damages was instead lost

profits, *i.e.*, the difference between the prices plaintiff actually received for its noncurrent inventory and the prices it would have received *but for* Yamaha's price discrimination on the 1982 models. The trial court denied Yamaha's motion to strike. On these facts, we agree with Yamaha, and conclude that the trial court erred in denying Yamaha's motion.

Although terming them "devaluation-of-inventory" damages, plaintiff essentially sought (and the jury awarded) damages measured by the difference between the prices Beaverton paid Yamaha in 1982 for 1980 and 1981 motorcycles and the prices plaintiff paid Yamaha in 1980 and 1981 for the same models, a measure of damages identical to presumed damages under ORS 646.160.[11]

In affirming that measure of damages, the Court of Appeals explained:

"[Yamaha] argues * * * that devaluation of inventory is not a proper measure of damages in this case [for plaintiff's 1980 and 1981 inventory], because plaintiff in fact sold all of the motorcycles in its inventory, most for prices above its actual costs. That fact is not inconsistent with finding that Beaverton's advertising reduced the value of plaintiff's 1980 and 1981 models. The evidence that plaintiff received less than its usual markup for those motorcycles because of the competition from Beaverton is evidence that the competition reduced the value of the inventory. A jury could find that the reduction in value was equal to the difference between the prices that plaintiff and Beaverton paid. Under ORS 646.160, there is a conclusive presumption that plaintiff suffered damages equal to the amount of the price discrimination. It is consistent with that provision to permit the jury to apply the same measure of damages to the discrimination on the older models." *Yamaha Store of Bend, Inc. v. Yamaha Motor Corp., supra*, 98 Or App at 296-97.

---

[11] The jury awarded plaintiff damages of $2,166.56 for the difference in price charged to Beaverton and plaintiff on 1982 motorcycles purchased from defendant and $23,691.45 for the reduction in value of plaintiff's 1980 and 1981 motorcycles, for total price discrimination damages of $25,858.01. The jury also gave plaintiff an identical award of $25,858.01 on its alternate breach of contract claim (for the reduction in value of plaintiff's inventory of new and noncurrent motorcycles due to Yamaha's breach of the dealership agreement). The trial court trebled the price discrimination award and entered judgment for plaintiff for $77,574.03. The trial court offset that award by $29,391, which the parties had stipulated plaintiff owed Yamaha for parts, resulting in a net recovery to plaintiff of $48,183.03.

On these facts, we disagree that it is "consistent" with ORS 646.160 to have permitted the jury to apply a devaluation of inventory measure of damages when all of plaintiff's noncurrent inventory had in fact been sold before trial.

At trial, plaintiff expressly disclaimed that it was seeking ORS 646.160 presumed damages with respect to its noncurrent inventory, apparently, according to the Court of Appeals,

> "because federal cases require that the allegedly discriminatory sales be reasonably contemporaneous. Plaintiff had bought its stock of 1980 and 1981 models in those years, while Beaverton purchased its stock in 1982." *Id.*, 98 Or App at 296 n 8.[12]

The trial court specifically instructed the jury that ORS 646.160 conclusively presumes that plaintiff was damaged in the amount of the discrimination on the 1982 models.[13] Plaintiff, however, was entitled to recover "such further damages" as it may have sustained as to its noncurrent inventory as a result of Yamaha's price discrimination on plaintiff's current inventory. The question is: How are "such further damages" to be measured?

---

[12] Federal cases interpreting the Robinson-Patman Act do require that discriminatory sales be "reasonably contemporaneous." *See, e.g., Rutledge v. Electric Hose & Rubber Co.*, 511 F2d 668, 677 (9th Cir 1975); *Atalanta Trading Corp. v. Federal Trade Com'n*, 258 F2d 365, 372 n 6 (2nd Cir 1958); *Valley Plymouth v. Studebaker-Packard Corp.*, 219 F Supp 608, 610 (SD Cal 1963). The posture of this case does not require us decide whether the reasonably contemporaneous rule applies under state law, or, if so, how it would apply to these facts.

[13] The trial court instructed the jury in part:

"With regard to the second claim only, that is the price discrimination claim if plaintiff has proven by preponderance of the evidence, each of the elements necessary to prevail on its price discrimination claim, the second claim, the law conclusively presumes that plaintiff was damaged in the amount of the price discrimination that is the difference between the price charged plaintiff and the price charged Beaverton. This amount may not exceed $3,292.24.

"This presumption of damages only applies to plaintiff's price discrimination claim. That presumed price differential cannot be the basis for the measure of damage on the other claim.

"* * * * *

"Plaintiff seeks damages for reduction in value of plaintiff's 1980 and 1981 motorcycle inventory which plaintiff had on hand at the time of the Beaverton deal. * * * The measure of damages for loss and value of property is the amount of money that is equal to the difference between the value of property in question before the Beaverton sale and the reduced value of the property, if any, resulting from the Beaverton sale."

██  For more than a century, the general rule in Oregon in assessing damages has been that a plaintiff should recover only such sums as will compensate a plaintiff for the injury suffered as a result of a defendant's wrong. *Budd v. Multnomah St. Ry. Co.,* 15 Or 413, 419, 15 P 569 (1887).[14] Furthermore, when damages are susceptible to proof with approximate accuracy, the necessary evidence must be supplied. *Porter Const. Co. v. Berry et al,* 136 Or 80, 93, 298 P 179 (1931).[15]

The presumed damages provision of ORS 646.160 is a specific statutory exception to the general rule just stated. That provision expressly overrides the general rule of compensatory damages by providing for statutory damages without regard to a plaintiff's actual losses; it also provides an express measure of such damages by conclusively presuming that a successful price discrimination plaintiff has "sustained damages equal to the monetary amount or equivalent of the unlawful discrimination." No similar directives are provided in the statutory provision for "such further damages."

██  We believe that by using the qualifier "further" in ORS 646.160, the legislature intended that insofar as possible any additional damages must be compensatory damages designed to restore a plaintiff to the place he or she would have occupied but for the price discrimination. Stated differently, the amount of "such further damages" should be equal to any actual loss to a plaintiff attributable to a defendant's price discrimination. This interpretation of our statute appears to be consistent with federal case law which holds that under the Robinson-Patman Act all price discrimination damages must be proved. *See e.g., J. Truett Payne Co. v. Chrysler Motors*

---

[14] *Accord Millers Mut. Fire Ins. Co. v. Wildish Const. Co.,* 306 Or 102, 117, 758 P2d 836 (1988) (just compensation without enrichment); *United Engine Parts v. Ried,* 283 Or 421, 432, 584 P2d 275 (1978) (to make plaintiff "whole"); *Ore. Mutual Fire Ins. Co. v. Mathis,* 215 Or 218, 224, 334 P2d 186 (1959) (same).

[15] Generally, a plaintiff must prove lost profits damages with reasonable certainty. *Willamette Quarries v. Wodtli,* 308 Or 406, 412, 781 P2d 1196 (1989). While the standard for proving damages, apparently, is not in issue here, federal courts sometimes allow a relaxed standard for proving damages in antitrust cases. *See Texaco Inc. v. Hasbrouck,* ＿＿ US ＿＿, ＿＿, 110 S Ct 2535, 110 L Ed 2d 492 (1990); *J. Truett Payne Co. v. Chrysler Motors Corp.,* 451 US 557, 565-66, 101 S Ct 1923, 68 L Ed 2d 442 (1981). We need not decide here whether the federal rule excusing antitrust plaintiffs from an unduly rigorous standard of proving antitrust injury is applicable to ORS 646.160.

*Corp., supra,* 451 US at 561-63 ("automatic damages" rejected; plaintiff must show actual damages). Plaintiff cites no legislative history or other authority in support of its argument that on a devaluation of inventory measure of damages was appropriate on these facts, and we have found none.

Plaintiff sold all of its noncurrent inventory before trial and had records demonstrating how much it actually received on those sales. The trial court should have required plaintiff to prove its actual damages with respect to all its claims, except its claim for ORS 646.160 presumed damages as to its 1982 inventory. Because the trial court erred in denying Yamaha's motion to strike plaintiff's evidence concerning damages pertaining to the 1980 and 1981 models, the judgment awarding plaintiff price discrimination damages of $23,691.45 for the reduction in value of its noncurrent inventory, and $25,858.01 for breach of contract based upon the same improper theory of damages cannot stand. A new trial is required.

The final issue is the scope of retrial. We first recognize the distinction between the liability and the damages issues. Plaintiff's proof of Yamaha's price discrimination on the 1982 motorcycles and of Yamaha's breach of the dealership agreement was sufficient. Therefore, there is no need for a new trial on the liability issues. Furthermore, proof of plaintiff's price discrimination damages on the 1982 motorcycles was specific. Therefore, as to plaintiff's claim for price discrimination: the judgment in plaintiff's favor on the issue of liability is affirmed; the judgment in plaintiff's favor for $6,499.68 ($2,166.56 × 3) presumed damages as to plaintiff's 1982 motorcycles is affirmed; the judgment in plaintiff's favor for $71,074.35 ($23,691.45 × 3) such further damages as to plaintiff's noncurrent inventory is vacated. As to plaintiff's claim for breach of contract: the judgment in plaintiff's favor on the issue of liability is affirmed, the judgment in plaintiff's favor for $25,858.01 breach of contract damages is vacated. The case is remanded to the trial court for a new trial only on the issue of price discrimination damages as to plaintiff's noncurrent inventory, and breach of contract damages for Yamaha's breach of the parties' dealership agreement.

The trial court found that plaintiff was entitled to reasonable attorney fees and costs on its price discrimination

claim pursuant to ORS 646.140 and on its contract claim pursuant to a provision in the parties contract. In the Court of Appeals, Yamaha assigned as error the trial court's award of $90,000 attorney fees to plaintiff as being "excessive." Yamaha did not pursue that issue in this court. Nevertheless, because we conclude that the trial court erred in denying Yamaha's motion to strike plaintiff's devaluation of inventory theory of damages, on remand, the circuit court shall reexamine the issue of attorney fees and costs.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part. Remanded to the circuit court for further proceedings consistent with this opinion.