Jack **CAIN, dba Airport Chevron Service, Plaintiff,**

v.

**CHEVRON U.S.A., INC., a Pennsylvania corporation, Defendant.**

**Civ. No. 90–712–PA.**

United States District Court,
D. Oregon.

Feb. 7, 1991.

David S. Shannon, Shannon, Johnson & Bailey, P.C., Portland, Or., for plaintiff.

Wayne Hilliard, Robert C. Dougherty, Lane Powell Spears Lubersky, Portland, Or., Robert P. Taylor, Edward V. Anderson, Roxane A. Polidora, Pillsbury, Madison & Sutro, San Fransico, Cal., for defendant.

## OPINION

PANNER, District Judge:

## BACKGROUND

Plaintiff, Jack Cain dba Chevron Airport Service, is a service station dealer seeking damages and injunctive relief for alleged price discrimination and failure to sell or offer to sell at a price set in good faith.

Defendant, Chevron U.S.A. Inc., is a refiner and marketer of gas and other petroleum products. Chevron removed this action to federal court based upon diversity of citizenship. 28 U.S.C. § 1332.

Defendant states that it has sold gas to plaintiff for resale under the Chevron brand for several years. In July 1989, defendant adopted a policy for establishing its dealer prices for gas (the TCA Program). Defendant offered a discount to dealers who were forced to sell their gas for less than the competitive norm due to local competition. In locations where dealers charged *more* than the norm, defendant raised its dealer prices. Plaintiff falls into the second group. Plaintiff operates the only gas station at the Portland International Airport. Chevron divides the greater Portland area into 21 local zones called "price reference areas" or "PRAs." In establishing the boundaries of a PRA, Chevron's objective is to group all Chevron service stations and selected long term stations of other brands that compete with one another for the same customers. The precise boundaries of a PRA are determined by traffic flow patterns, locations of competing stations, price movement patterns and natural barriers to traffic flow. Plaintiff's gas station is the only one in his PRA. (*See* Wilkerson Declaration, p. 6).

Defendant alleges that plaintiff has, for years, charged some of the highest prices for gas among all Chevron dealers in Portland. Defendant's new policy raises plaintiff's buying price for gas above that of other Portland Chevron dealers. Defendant states that by removing a portion of the dealer's incentive to charge noncompetitive prices, defendant hopes to encourage its dealers to keep their resale prices competitive.

I grant defendant's motion for summary judgment and deny plaintiff's motion for partial summary judgment. This case is dismissed.

## STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The materiality of a fact is determined by the substantive law on the issue. *T.W. Electrical Service v. Pacific Electrical Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir.1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable party could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Electrical*, 809 F.2d at 630.

DISCUSSION

1. PRICE DISCRIMINATION

Plaintiff claims that defendant violated ORS 646.040 of Oregon's Anti–Price Discrimination Law which states:

It is unlawful for any person engaged in commerce ... in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities ... of like grade and quality ... where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

ORS 646.040(1).

The parties agree that the Oregon Supreme Court holds that federal authorities interpreting the Robinson–Patman Act, 15 U.S.C. § 13(a) (1976), are persuasive in interpreting ORS 646.040. *See Yamaha Store of Bend, Oregon, Inc. v. Yamaha Motor Corp.*, 310 Or. 333, 339 n. 6, 798 P.2d 656 (1990).

A. *Plaintiff Has Suffered No Competitive Injury*

Defendant alleges that plaintiff has not suffered any competitive injury caused by the higher prices paid by plaintiff. I agree. Plaintiff argues that he does not have to demonstrate that he suffered a competitive injury, relying on ORS 646.160:

upon proof that the plaintiff has been unlawfully discriminated against by the defendant, [plaintiff] shall conclusively be presumed to have sustained damages equal to the monetary amount or equivalent of the unlawful discrimination....

However, under ORS 646.040, the competitive injury requirement is part of the liability inquiry, separate and distinct from the presumption of damages found in ORS 646.160. ORS 646.040 requires a factual showing, not merely legal argument, of competitive injury resulting from a challenged price differential.

In *Top Service Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 582 P.2d 1365 (1978), the Oregon Supreme Court affirmed a JNOV to defendant because plaintiff offered no evidence of actual or probable effect of price differentials on competition. *Top Service* held that proof of a violation of ORS 646.040 requires:

(1) that the seller or purveyor was engaged in commerce, (2) that he directly or indirectly discriminated in price between different purchasers of commodities, or services or output of a service trade, of like grade and quality, (3) that it occurred in the course of such commerce, as above, (4) that the effect of such discrimination may be substantially (a) to lessen competition in any line of

commerce, or (b) to tend to create a monopoly in any line of commerce, or (c) to injure, destroy or prevent competition (i) with either party to the discriminatory concession or (ii) with customers of either of them.

*Id.*, 283 Or. at 217, 582 P.2d 1365.

*Top Service* acknowledges that potential as well as present substantial lessening of competition satisfies the statute. However, *Top Service* found that plaintiff failed "to point to any evidence of actual or potential lessening of competition or incipient monopolization in the relevant market,...." *Id.*, 283 Or. at 222, 582 P.2d 1365. The Court went on to hold:

> plaintiff's brief merely states that 'the jury was entitled to infer that such discrimination would result in the injury to competition.' It does not cite any evidence in the transcript from which the jury might draw such an inference.... Plaintiff does not claim that Allstate bargained for exclusive reductions, not available to other customers or body shops, or that Allstate would not let other shops than its preferred 'competitive shops' meet the estimates its adjusters calculated and thus compete....

*Id.*

The same situation exists here. Plaintiff has failed to present any facts in support of his allegation of actual or probable individual competitive injury. Not every price differential is unlawful, only those that *result in injury* to the competitive process. *See Top Service*, 283 Or. at 222, 582 P.2d 1365. I find no competitive injury here.

### B. *Actual and Substantial Competition*

*Top Service* also holds that plaintiff must establish that he was in actual and substantial competition with a favored purchaser. The Ninth Circuit interpreted a California price discrimination statute similar to the Oregon statute when a Shell lessee dealer brought claims of unlawful price discrimination against his supplier. *See Hamro v. Shell Oil Company*, 674 F.2d 784 (9th Cir.1982). *Hamro* affirmed a directed verdict for the defendant finding it fatal that plaintiff:

failed to offer any evidence from which a reasonable person could conclude that [plaintiff] was in competition with Shell's more favored customers.

*Id.* at 790. *See also, England v. Chrysler Corp.*, 493 F.2d 269, 271–72 (9th Cir.), *cert. den.*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974) ("the advantaged and disadvantaged parties must be shown to be competing customers ... in order for there to be discrimination"); and *Yamaha Store of Bend, supra* ("if the favored and disfavored buyers ... do not in fact compete for the same customers, there cannot be a reasonable probability of harm to competition").

■ Plaintiff's argument that he competes with other Chevron dealers is not supported by any evidence in the record. Plaintiff has not shown any shift of customers based on price, nor has plaintiff disclosed the identity or existence of any customers that ever opted to move their business from one Chevron station to another. Plaintiff has also failed to demonstrate the existence of any sympathetic price movements that characterize genuine competition. The record does not reflect any evidence that plaintiff has ever attempted to price competitively with other stations.

### C. *Lower Prices Were Available to Plaintiff*

Finally, it is a defense to a claim of price discrimination that the lower prices given to another were also available to plaintiff. In *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1326 (6th Cir.1983), the court granted summary judgment for defendant on plaintiff's price discrimination claim because defendant's promotional packages were available to plaintiff if he had wanted them. Similarly, plaintiff here admitted that he chose not to take advantage of the availability of lower prices, because it was more profitable for him to pay a higher price for gas and retain his high profit margin. (*See* Cain Depo., p. 95–96). Plaintiff testified that this pricing strategy was made possible by the absence of competition at the airport. *Id.* Plaintiff

admits that he has never adjusted his gas prices in response to prices charged by other Chevron dealers and that his gross profits increased after the TCA Program was implemented in July 1989. Plaintiff could have taken advantage of a lower price but instead made an informed business decision to the contrary because it was more profitable to simply maintain his profit margins in accordance with the higher price he paid to Chevron.

*Bouldis* held that price concessions and allowances will not give rise to a Robinson–Patman violation "if the concessions are available equally and functionally to all customers." *Id.* at 1326. A claim of price discrimination will not lie "if the buyer failed to take advantage of a price concession which was realistically and functionally available." *Id.* Clearly, the lower gas price offered by defendant was "realistically and functionally available" to plaintiff, *if* he chose to lower his gas prices. *See Jay Walton Enterprises, Inc. v. Rio Grande Oil Co. of Bernalillo*, 106 N.M. 55, 58–59, 738 P.2d 927, 930–31 (App.), *cert. den.*, 106 N.M. 7, 738 P.2d 125 (1987) (no price discrimination "*despite* the fact that [one dealer] fails to take advantage of any allowance that has been practically available to him") (emphasis in original).

■ The evidence in the record demonstrates that plaintiff is not in competition with any other Chevron dealer and plaintiff's ability to compete was not injured by defendant's higher prices. Therefore, I grant defendant's summary judgment motion as to plaintiff's claim for price discrimination.

## 2. FAILURE TO ACT IN GOOD FAITH

Defendant moves for summary judgment on this claim and plaintiff moves for cross summary judgment. Plaintiff alleges a violation pursuant to ORS 650.210(2) for failure to sell or offer to sell at a price set in good faith. "Good faith" is defined in ORS 72.1030(1)(b) as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade."

■ I find that defendant's system of zone pricing is a commercially reasonable trade practice, used by gasoline marketers for many years. In *Butera v. Sun Oil Co., Inc.*, 496 F.2d 434 (1st Cir.1974), the court *approved* a similar system of competitive allowances:

> The CA [competitive allowance] varied in different marketing areas across the nation, and enabled Sun to adjust its wholesale price in light of the local competitive area. Sun set the CA so that the wholesale (tankwagon less CA) price enabled its dealers to make what Sun believed a sufficient profit while charging a retail price competitive with rival service stations.

*Id.* at 435.

Both parties cite *Richard Short Oil Co., Inc. v. Texaco, Inc.*, 799 F.2d 415 (8th Cir. 1986), in which a petroleum distributor challenged Texaco's volume rebate program alleging lack of "good faith" in the price differentials created by the program. The court affirmed summary judgment for Texaco, holding there was no "evidence of conscious indifference, willfulness, or wantonness on the part of Texaco in applying the rebate program." *Id.* at 422. The court found that Texaco's conduct conformed with the UCC's definition of good faith because plaintiff failed to:

> produce evidence of the pricing or rebate practices of other oil companies in Little Rock or elsewhere; nor did [plaintiff] present evidence of retailer-wholesaler price margins, price rebates, or ceilings on price rebates.

*Id.* at 423.

Similarly, plaintiff here has failed to make any showing that defendant's TCA Program compared unfavorably with other pricing systems used in the industry. Further, plaintiff failed to present any authority under ORS 650.210 suggesting that defendant's zone pricing system is improper or unreasonable. Plaintiff has also failed to present the court with any evidence that defendant implemented the zone pricing system in "bad faith." Plaintiff does nothing more than offer defendant's system of price adjustments to suggest that defen-

dant violated ORS 650.210. There is nothing in the record to suggest that defendant's pricing system fails to meet the standards of ORS 650.210. Conversely, defendant provides the court with several cases in which courts have approved pricing systems similar to defendant's as "reasonable commercial standards of fair dealing in the trade." *See Texaco Puerto Rico, Inc. v. Medina,* 834 F.2d 242 (1st Cir.1987) (summary judgment granted for Texaco when service station dealer challenged Texaco's volume rebate pricing program). *Texaco Puerto Rico* held:

> Texaco's pricing arrangement ... is merely a promotional plan. Under the arrangement, Texaco sells gasoline to its dealers at prices over the prevailing market gasoline price, with a rebate for sales below market price if certain amounts are sold.

*Id.* at 248. *See also, American Oil Co. v. F.T.C.,* 325 F.2d 101 (7th Cir.1963), *cert. den.,* 377 U.S. 954, 84 S.Ct. 1631, 12 L.Ed.2d 498 (1964) (defendant's competitive price allowances granted to dealers in predetermined areas did not constitute price discrimination); and *Mowery v. Standard Oil Co. of Ohio,* 463 F.Supp. 762, 766 (N.D. Ohio 1976), *aff'd,* 590 F.2d 335 (6th Cir. 1978) (affirmed directed verdict for defendant holding that a Temporary Competitive Allowance Program was lawful under §§ 1 and 2 of the Sherman Act and § 13 of the Robinson–Patman Act). These cases establish that zone pricing is commonplace in the petroleum business and constitutes a reasonable trade practice.

The parties agree there are no disputed material issues of fact. I find that defendant is entitled to judgment as a matter of law and grant its motion for summary judgment on this claim. Plaintiff's motion for summary judgment is denied.

CONCLUSION

Defendant's summary judgment motion is granted. Plaintiff's partial motion for summary judgment is denied. This case is dismissed.