**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CASCADE HEALTH SOLUTIONS FKA
MCKENZIE-WILLAMETTE HOSPITAL,
an Oregon nonprofit corporation,
*Plaintiff-Appellant,*

v.

PEACEHEALTH, a Washington State
nonprofit corporation,
*Defendant-Appellee,*

and

PACIFICSOURCE HEALTH PLANS,
*Defendant,*

REGENCE BLUECROSS
BLUESHIELD OF OREGON;
PROVIDENCE HEALTH PLAN;
MCKENZIE-WILLAMETTE REGIONAL
MEDICAL CENTER ASSOCIATES, LLC,
*Defendant-Intervenors.*

No. 05-35627

D.C. No.
CV-02-06032-ALH

1529

McKenzie-Willamette Hospital,
*Plaintiff-Appellee,*

v.

PeaceHealth, a Washington State
nonprofit corporation,
*Defendant-Appellant,*

and

PacificSource Health Plans,
*Defendant,*

Regence BlueCross
BlueShield of Oregon;
Providence Health Plan;
McKenzie-Willamette Regional
Medical Center Associates, LLC,
*Defendant-Intervenors.*

No. 05-35640
D.C. No.
CV-02-06032-HA

McKenzie-Willamette Hospital,
*Plaintiff-Appellee,*

v.

PeaceHealth, a Washington State
nonprofit corporation,
*Defendant-Appellant.*

No. 05-36153
D.C. No.
CV-02-06032-HA

MCKENZIE-WILLAMETTE HOSPITAL,
an Oregon nonprofit corporation,
    *Plaintiff-Appellant,*

  v.

PEACEHEALTH,
    *Defendant-Appellee.*

No. 05-36202

D.C. No.
CV-02-06032-HA

ORDER
CERTIFYING
QUESTION TO
THE SUPREME
COURT OF
OREGON

Filed February 1, 2008

Before: Ronald M. Gould, Richard A. Paez, and
Johnnie B. Rawlinson, Circuit Judges.

## ORDER

GOULD, Circuit Judge:

McKenzie-Willamette Hospital ("McKenzie") filed a complaint in the district court against PeaceHealth asserting seven claims for relief, two of which arose under Oregon state law for price discrimination and intentional interference with prospective economic advantage.[1] The jury found in McKenzie's favor on both of the Oregon state law claims, and PeaceHealth appealed. Since the jury's verdict, an intervening U.S. Supreme Court ruling, *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993), has injected uncertainty into the status of Oregon's price discrimination

---

[1]The remaining five claims arose under the federal antitrust laws for: monopolization, attempted monopolization, conspiracy to monopolize, tying, and exclusive dealing.

doctrine. Because McKenzie's price discrimination claim raises an important, dispositive issue of Oregon law, we respectfully certify a question for review by the Supreme Court of Oregon, pursuant to Or. Rev. Stat. § 28.200, namely whether Oregon price discrimination law follows the requirements as the U.S. Supreme Court delineated in *Brooke Group*. We offer the following statement of relevant facts and explanation of the "nature of the controversy in which the question[ ] arose." Or. Rev. Stat. § 28.210(2) (2005).

**Background**

McKenzie and PeaceHealth are the only two providers of hospital care in Lane County, Oregon. The jury found, and the parties do not dispute on appeal, that the relevant market in this case is the market for primary and secondary acute care hospital services in Lane County. Primary and secondary acute care hospital services are common medical services like setting a broken bone and performing a tonsillectomy. Some hospitals also provide what the parties call "tertiary care," which includes more complex services like invasive cardiovascular surgery and intensive neonatal care.

In Lane County, PeaceHealth operates three hospitals while McKenzie operates one. McKenzie's sole endeavor is McKenzie-Willamette Hospital, a 114-bed hospital that offers primary and secondary acute care in Springfield, Oregon. McKenzie does not provide tertiary care. In the time period leading up to and including this litigation, McKenzie had been suffering financial losses, and, as a result, merged with Triad Hospitals, Inc.[2] so that it could add tertiary services to its menu of care.

The largest of PeaceHealth's three facilities is Sacred Heart

---

[2]As a result of the merger, McKenzie's name changed to Cascade Health Solutions. For the purposes of this order, we, like the parties, continue to refer to Cascade Health Solutions as McKenzie.

Hospital, a 432-bed operation that offers primary, secondary, and tertiary care in Eugene, Oregon. PeaceHealth also operates Peace Harbor Hospital, a 21-bed hospital in Florence, Oregon and Cottage Grove Hospital, an 11-bed hospital in Cottage Grove, Oregon. In Lane County, PeaceHealth has a 90% market share of tertiary neonatal services, a 93% market share of tertiary cardiovascular services, and a roughly 75% market share of primary and secondary care services.

An appreciation of the relationship between hospitals and insurers is necessary to understand the price discrimination issues in this case. In the transaction between a hospital that sells care services and an insurer that buys care services, the price agreed upon is often referred to as a "reimbursement rate." For example, in a hospital-insurer contract, the agreed upon price might be "a 90% reimbursement rate." A 90% reimbursement rate price means that, when the insurer must purchase services from the hospital, the insurer gets a 10% discount off the hospital's regular price, also called the charge master or list price. It follows that hospitals prefer high reimbursement rates and insurers prefer low reimbursement rates, as each group pursues its own economic interest.

McKenzie asserts that PeaceHealth offered insurers discounts of 35% to 40% on tertiary services if the insurers made PeaceHealth their sole preferred provider for *all* services—primary, secondary, and tertiary. In 2001, for example, Peace-Health was the only preferred provider of hospital care under the preferred provider plan ("PPP") of Regence BlueCross BlueShield of Oregon ("Regence").[3] At that time, Regence was paying PeaceHealth a 76% reimbursement rate for all of PeaceHealth's medical services, including primary, secondary, and tertiary services. Around that time, pursuant to Mc-

---

[3]In a preferred provider plan, health care providers contract with an insurer to provide health care to the insurer's customers. The insurer's customers pay much higher prices if they obtain services from providers other than those with whom their insurer has contracted.

Kenzie's request, Regence considered adding McKenzie to the PPP as a preferred provider of primary and secondary services. When Regence's contract with PeaceHealth came up for its annual renewal, Regence solicited two proposals from PeaceHealth. Under one proposal, PeaceHealth would remain the only preferred provider. Under the other proposal, Mc-Kenzie would be added as a preferred provider. PeaceHealth offered an 85% reimbursement rate for all services if it remained Regence's sole preferred provider of primary, secondary, and tertiary services, and a 90% reimbursement rate if McKenzie was added as a preferred provider of primary and secondary services. Regence thereafter declined to include McKenzie as a preferred provider.

That same year, McKenzie sought and received admission as a preferred provider of primary and secondary services under the preferred plan offered by Providence Health Plan ("Providence"). Until then, PeaceHealth was the only preferred provider of primary, secondary, and tertiary services in the Providence preferred plan. Upon McKenzie's admission as a preferred provider, PeaceHealth increased its reimbursement rate with Providence from 90% to 93%. The evidence showed that insurers who made PeaceHealth their exclusive preferred provider across all services, thus purchasing from PeaceHealth a full complement of primary, secondary, and tertiary services, paid lower reimbursement rates than insurers who purchased tertiary services from PeaceHealth, but at least some primary and secondary services from McKenzie.

Based on these incidents, McKenzie brought, among other antitrust law claims, a claim of primary-line price discrimination[4] under Oregon state law. McKenzie's theory was that

---

[4]Price discrimination claims can take three forms: primary line, secondary line, or tertiary line. Primary-line price discrimination includes conduct, like predatory pricing, that injures the direct competitors of the discriminating seller. *See Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 126 S. Ct. 860, 870 (2006).

PeaceHealth discriminated in price as between Regence and Providence. Specifically, PeaceHealth, who was the exclusive preferred provider in Regence's PPP, charged Regence an 85% reimbursement rate while PeaceHealth charged Providence, an insurer with whom PeaceHealth had no exclusive arrangement, a 93% reimbursement rate. McKenzie alleged that PeaceHealth's price discrimination injured McKenzie because its pricing scheme was the cause of McKenzie's inability to obtain preferred status with Regence.

To decide whether McKenzie established a claim of primary-line price discrimination under Oregon law, the district court instructed the jury as follows:

> [I]n order for the plaintiff to establish a violation of the price discrimination statute, it has the burden of proving each and every one of the following elements by a preponderance of the evidence: (1) That there were contemporaneous sales by a defendant to other insurers in the relevant market; (2) that defendant has discriminated in price between insurers in the contemporaneous sale of hospital services; and (3) that the effect of defendant's price discrimination was to substantially lessen competition or create a monopoly in the sale of hospital services in the relevant market, or to injure, destroy or prevent competition between plaintiff and defendant.

The district court derived its instruction from Oregon's price discrimination law as stated in the Oregon Supreme Court's 1978 decision in *Redmond Ready-Mix, Inc. v. Coats*, 582 P.2d 1340 (Or. 1978). However, in light of what the Oregon Supreme Court has previously said, an intervening United States Supreme Court opinion, *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993), calls into question the validity of both *Redmond Ready-Mix* and the jury instruction relying on it.

After the United States Supreme Court clarified the federal price discrimination law in *Brooke Group*, no Oregon court has published an opinion interpreting section 646.040, leaving Oregon price discrimination law to this degree currently unsettled, as we see it. Because resolution of McKenzie's price discrimination claim rests on a question of state law, we must decide how the Oregon Supreme Court would decide the issue before us. *See, e.g., Burlington Ins. Co. v. Oceanic Design & Constr., Inc.*, 383 F.3d 940, 944 (9th Cir. 2004). However, here, after and in light of *Brooke Group*, it is unclear to us how the Oregon Supreme Court would decide the primary-line price discrimination issue at play.

On the one hand, the Oregon Supreme Court might continue to follow its precedent in *Redmond Ready-Mix*. In *Redmond Ready-Mix*, the plaintiff brought a primary-line price discrimination suit under section 646.040 against the husband and wife who were the plaintiff's competitor in the market to sell retail pre-mixed concrete. 582 P.2d at 1342. The plaintiff asserted that the defendants sold concrete for a lower price in the geographic areas in which the plaintiff competed with the defendants than in the geographic areas in which the plaintiff did not compete. *See id.* at 1342-45. The trial court found that the defendants did not violate section 646.040. *See id.* at 1342. The trial court reasoned that although the defendants sold concrete at lower prices in the competitive geographic area than in other areas, the plaintiff did not establish that the lower prices lessened competition as required by the section 646.040 because the "defendants were not selling below their average cost." *Id.* The Oregon Supreme Court affirmed.

*Id.* at 1352.

In accordance with the prevailing federal case law at the time, the Oregon Supreme Court noted that a claim of primary-line price discrimination could be sustained upon a showing that the defendant price discriminated with a "predatory intent." *See id.* at 1348. The Oregon Supreme Court

pointed out that predatory intent could be implied from below-cost selling. *Id.* at 1350. It held, however, that there was no evidence the defendants priced below cost. *See id.* It then held that, alternatively, the plaintiffs could establish a claim of primary-line price discrimination by showing that the defendants' price discrimination resulted in a substantial impairment of competition. *Id.* The court considered several factors to determine whether the defendants' price discrimination impaired competition. *See id.* These factors included: (a) monopoly or overpowering position of the seller in the market; (b) aggressive objectives towards the seller's smaller rivals; (c) deep, sustained undercutting of rivals' prices; (d) persistent sales below the seller's cost; and (e) actual or impending demise of a seller's sole rival in a market. *Id.* In conclusion, and in view of these factors, the Oregon Supreme Court held that the evidence did not demonstrate any impairment of competition and affirmed the judgment of the trial court. *See id.* at 1352.

If the Oregon Supreme Court would still follow *Redmond Ready-Mix*, then the trial court's jury instruction is valid. Under *Redmond Ready-Mix*, unlike under *Brooke Group*, discussed below, a plaintiff can establish a claim of primary-line price discrimination by showing either predatory intent, *e.g.*, by showing "below cost" sales, *id.* at 1350, or a substantial impact on competition, shown by demonstrating some of the above-mentioned five indicia key to confirming the existence of competitive impairment, *id.*

On the other hand, in the light of its prior pronouncements, we think it likely that the Oregon Supreme Court will decide to follow *Brooke Group*, or at least that is a significant possibility raising question in our mind whether we can properly affirm a judgment of the district court that was based on the *Redmond Ready-Mix* view of the required elements of price discrimination under Oregon law. While Oregon is entirely free to chart a state law antitrust course that is independent from the federal doctrine, we cannot wholly ignore the likeli-

hood that the Oregon Supreme Court now would follow federal price discrimination law as set forth in *Brooke Group*. For one thing, the Oregon price discrimination statute,[5] Or. Rev. Stat. § 646.040, is nearly identical to and indeed is modeled on the federal price discrimination provisions in § 2 of the Robinson-Patman Act,[6] 15 U.S.C. § 13. Second, and more importantly, the Oregon Supreme Court has previously and explicitly declared that federal price discrimination law would

---

[5]The Oregon statute provides:

> It is unlawful for any person engaged in commerce or food commerce, or both, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities, or services or output of a service trade, of like grade and quality or to discriminate in price between different sections, communities or cities or portions thereof or between different locations in sections, communities, cities or portions thereof in this state, where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

Or. Rev. Stat. § 646.040(1).

[6]The Robinson-Patman Act provides:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them . . . .

15 U.S.C. § 13(a).

guide the interpretation of Oregon price discrimination law in section 646.040. *Yamaha Store of Bend, Or., Inc. v. Yamaha Motor Corp.*, 798 P.2d 656, 659 n.6 (Or. 1990), *modified on reconsideration on other grounds*, 806 P.2d 123 (Or. 1991); *Redmond Ready-Mix*, 582 P.2d at 1346. Also, the Oregon Supreme Court stated in *Redmond Ready-Mix* that it was reaching its decision at a time when "[m]uch of the 'federal law' on [primary-line price discrimination was] in a recognized state of confusion." *Redmond Ready-Mix*, 582 P.2d at 1346.

*Brooke Group* has now dispelled that confusion in at least one area—a plaintiff in a federal primary-line price discrimination case must prove that its rival priced below cost. Thus *Brooke Group*'s clarification of federal price discrimination law calls into question whether the Oregon Supreme Court will continue to interpret Oregon price discrimination law as outlined in *Redmond Ready-Mix*. The Oregon Supreme Court might now decide to follow *Brooke Group* by analogy in interpreting the parallel state price discrimination law,[7] or conversely, it might decide to adhere to its prior decision without change. If the former is the case, then the district court's instruction on state law was error, but if the latter is the case, then the jury instruction and the jury verdict on Oregon price discrimination law should stand. Because we are uncertain of how the Oregon Supreme Court will now view this important question, we certify it to the Oregon Supreme Court.

---

[7]In *Brooke Group*, a primary-line price discrimination case brought under the Robinson-Patman Act, the Supreme Court held that, in a single product predatory pricing case, a plaintiff must prove (1) below-cost pricing and (2) likelihood of recoupment regardless of "whether the claim alleges predatory pricing under § 2 of the Sherman Act or primary-line price discrimination under the Robinson-Patman Act." *Brooke Group Ltd.*, 509 U.S. at 222.

**Question Certified**

We respectfully certify the following dispositive question of law to the Oregon Supreme Court:[8]

Under the Oregon price discrimination statute, Or. Rev. Stat. § 646.040, is a plaintiff required to show (1) below-cost pricing and (2) likelihood of recoupment? In other words, does Oregon law now follow the elements of a primary-line price discrimination claim as outlined in *Brooke Group*?

**Conclusion**

We respectfully request the Oregon Supreme Court to exercise its discretionary authority to accept and decide this question of law. We do not intend our framing of this question to restrict the Oregon Supreme Court's consideration of any issues that it determines are relevant. We have previously acknowledged both the Oregon Supreme Court's ability to "reformulate the relevant state law questions as it perceives them to be in light of the contentions of the parties," *Lombardo v. Warner*, 391 F.3d 1008, 1010 (9th Cir. 2004) (en banc) (citations omitted), and our obligation to abide by that court's determination of the state law questions presented, *id*. If the Oregon Supreme Court resolves this question, we will resolve the issue in our case precisely in accord with its answer.

The Clerk of this Court is hereby ordered to transmit forthwith to the Oregon Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, a copy of this order, signed by the presiding judge, and all relevant briefs and excerpts of record pursuant to Or. Rev. Stat. § 28.215 (2005) and Or. R. App. Proc. 12.20(1)(b). Pursuant

---

[8]Even though this course of action was not suggested by either party, we may properly certify this question sua sponte. *See* Or. Rev. Stat. § 28.205 (2005).

to Oregon Rule of Appellate Procedure 12.20(5)(c) the Clerk of this Court shall transmit to the Oregon Supreme Court all or any portion of the district court record in this case as that Court deems necessary or appropriate.

Further proceedings in our court on the certified question are stayed pending the Oregon Supreme Court's decision whether it will accept review, and if so, our receipt of the answer to the certified question. The case is withdrawn from submission, in pertinent part, until further order from this Court. The panel will resume control and jurisdiction on the certified question upon receiving an answer to the certified question or upon the Oregon Supreme Court's decision to decline to answer the certified question. When the Oregon Supreme Court decides whether or not to accept the certified question, the parties shall file a joint report informing us of the decision. If the Oregon Supreme Court accepts the certified question, the parties shall file a joint status report every six months after the date of the acceptance, or more frequently if circumstances warrant.

**IT IS SO ORDERED.**

RONALD M. GOULD
Circuit Judge, United States Court of Appeals for the Ninth Circuit

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2008 Thomson/West.